No. 2014-1786

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

SEGIN SYSTEMS, INC. and
SEGIN SOFTWARE, LLC (d/b/a RYNOHLIVE),

*Plaintiffs-Appellants*,

— v. —

STEWART TITLE GUARANTY COMPANY,
PROPERTYINFO CORPORATION, and
FIRST BANKING SERVICES, INC.,

*Defendants-Appellees*.

Appealed from the United States District Court
for the Eastern District of Virginia
Civ. No. 2:13-cv-00190 RAJ-TEM, Judge Raymond A. Jackson

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

A. John P. Mancini
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

Paul W. Hughes
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for* Plaintiffs-Appellants

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, A. John P. Mancini, counsel for plaintiffs-appellants Segin Systems, Inc. and Segin Software, LLC (d/b/a/ Rynoh*Live*), certifies the following:

1.  The full name of the parties represented by me are:

    Segin Systems, Inc. and Segin Software, LLC.

2.  The name of the real party-in-interest (if the party named in the caption is not the real party-in-interest) represented by me is:

    Not applicable.

3.  All parent corporations or any publicly held corporations that own 10% or more of the stock of *amici*:

    Not applicable.

4.  The names of all law firms and the lawyers that appeared for the party now represented by me in this proceeding are:

    MAYER BROWN LLP
    A. John P. Mancini
    Brian Rosenthal
    Ann Marie Duffy
    Vanessa M. Biondo
    Paul W. Hughes
    Katie Fernandez
    Barry Clayton McCraw
    Elizabeth M. Winokur

TROUTMAN SANDERS LLP
John C. Lynch
Robert A. Angle
Ethan G. Ostroff

September 12, 2014

/s/ A. John P. Mancini
A. John P. Mancini

# TABLE OF CONTENTS

Certificate of Interest ..................................................................ii

Table of Authorities .................................................................. v

Statement of Related Cases ...................................................... ix

Introduction................................................................................ 1

Jurisdictional Statement............................................................. 2

Issues Presented for Review ...................................................... 2

Statement .................................................................................... 3

    A.  The AIA stay provision. ................................................... 4

    B.  Factual allegations. ......................................................... 5

    C.  Proceedings below. .......................................................... 8

Summary of the Argument........................................................ 12

Argument.................................................................................. 14

I.  Review Of An AIA Stay Order Is De Novo. ........................... 14

II.  The District Court's Use Of Section 18(b) To Stay An
    Unrelated, Non-Patent Claim Was Error. ............................ 16

III. Alternatively, The District Court Erred In Its Weighing Of The
    Section 18(b) Factors, Regardless Of The Standard Of Review. .......... 25

    A.  The CBM will not simplify the breach of contract claim................. 26

    B.  Discovery is nearly complete and a trial date was set. ................... 28

    C.  A stay substantially prejudices Segin. ............................... 31

    D.  A stay will not reduce the burden of litigation. .............................. 34

Conclusion ............................................................................... 36

# TABLE OF AUTHORITIES

## CASES

*ADA Solutions, Inc. v. Engineered Plastics, Inc.,*
826 F. Supp. 2d 348 (D. Mass. 2011)........................................24

*Asetek Holdings, Inc. v. Cooler Master Co.,*
2014 WL 1350813 (N.D. Cal. 2014)........................................32

*Benefit Funding Sys. LLC v. Advance Am.,*
*Cash Advance Ctrs., Inc.,*
2013 WL 3296230 (D. Del. 2013)....................................19, 34

*Broadcast Innovation, L.L.C. v. Charter Communications, Inc.,*
2006 WL 1897165 (D. Colo. 2006) ...........................................4

*Cameras Onsite, LLC v. Digital Mgmt. Solutions, Inc.,*
2010 WL 1268054. (S.D. Tex. 2010) ........................................23

*Card Tech. Corp. v. DataCard Corp.,*
2007 WL 551615 (D. Minn. 2007)...........................................24

*Cherokee Nation v. United States,*
124 F.3d 1413 (Fed. Cir. 1997) ...........................21, 26, 33, 36

*Clinton v. Jones,*
520 U.S. 681 (1997) ...............................................................18

*Cognex Corp. v. Nat'l Instruments Corp.,*
2001 WL 34368283 (D. Del. 2001)..........................................31

*Cooper Techs. Co. v. Thomas & Betts Corp.,*
2008 WL 906315 (E.D. Tex. 2008)..........................................33

*Creative Consumer Concepts, Inc. v. Kreisler,*
563 F.3d 1070 (10th Cir. 2009)...............................................19

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,*
381 F.3d 131 (3d Cir. 2004) .............................................18, 20

*Dependable Highway Express, Inc. v. Navigators Ins. Co.,*
498 F.3d 1059 (9th Cir. 2007).....................................23, 26, 34

v

# TABLE OF AUTHORITIES
## (continued)

*ePlus, Inc. v. Lawson Software, Inc.*,
 2010 WL 1279092 (E.D. Va. 2010) ......................................................... 24

*Freeny v. Apple Inc.*,
 2014 WL 3611948 (E.D. Tex. 2014) ......................................................... 29

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
 134 S. Ct. 1744 (2014) ................................................................................ 17

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
 2008 WL 2078623 (S.D. Cal. 2008) ......................................................... 31

*Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*,
 710 F.2d 199 (5th Cir. 1983) ..................................................................... 18

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ...................................................................... 18, 22, 34

*In re Laughlin Prods., Inc.*,
 265 F. Supp. 2d 525 (E.D. Pa. 2003) ................................................... 24, 27

*Lockyer v. Mirant Corp.*,
 398 F.3d 1098 (9th Cir. 2005) ............................................................ 19, 22

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) ........................................................................ 18

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
 2014 WL 3736514 (E.D. Tex. 2014) ......................................................... 30

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
 2011 WL 836673 (D. Md. 2011) ................................................................ 33

*Miles v. Apex Marine Corp.*,
 498 U.S. 19 (1990) ...................................................................................... 15

*Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
 922 F. Supp. 2d 486 (D. Del. 2013) .......................................................... 30

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ........................................................................................ 17

# TABLE OF AUTHORITIES
## (continued)

*Netlist, Inc. v. Smart Storage Sys., Inc.,*
2014 WL 4145412 (N.D. Cal. 2014) ........................................ 32

*Nippon Steel & Sumito Metal Corp. v. POSCO,*
2013 WL 1867042 (D.N.J. 2013) ............................................ 24

*Nken v. Holder,*
556 U.S. 418 (2009) .................................................................. 18

*Ortega Trujillo v. Conover & Co. Commc'ns,*
221 F.3d 1262 (11th Cir. 2000) ............................................... 23

*Panduit Corp. v. HellermannTyton Corp.,*
2004 WL 1898954 (N.D. Ill. 2004) ......................................... 23

*Photoflex Products, Inc. v. Circa 3 LLC,*
2006 WL 1440363 (N.D. Cal. 2006) ................................... 23, 27

*Pierce v. Underwood,*
487 U.S. 552 (1988) .................................................................. 14

*Procter & Gamble Co. v. Kraft Foods Global, Inc.,*
549 F.3d 842 (Fed. Cir. 2008) ................................................. 15

*Procter & Gamble Co. v. Team Techs., Inc.,*
2014 WL 533494 (S.D. Ohio 2014) .......................................... 24

*Rodriguez v. United States,*
480 U.S. 522 (1987) .................................................................. 15

*Salve Regina Coll. v. Russell,*
499 U.S. 225 (1991) .................................................................. 16

*Shurtape Techs., LLC v. 3M Co.,*
2013 WL 789984 (W.D.N.C. 2013) .......................................... 24

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.,*
2010 WL 1946262 (E.D. Va. 2010) .......................................... 31

*Tesco Corp. v. Weatherford Int'l, Inc.,*
599 F. Supp. 2d 848 (S.D. Tex. 2009) ...................................... 33

# TABLE OF AUTHORITIES
## (continued)

*Tokuyama Corp. v. Vision Dynamics, LLC,*
  2008 WL 4452118 (N.D. Cal. 2008)........................................................24

*TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.,*
  2013 WL 6021324 (N.D. Cal. 2013)........................................................33

*VirtualAgility Inc. v. Salesforce.com, Inc.,*
  2014 WL 3360806 (Fed. Cir. 2014)..................................................*passim*

**STATUTES**

28 U.S.C. § 1659............................................................................19

Leahy-Smith America Invents Act, Pub. L. No. 112-29,
  125 Stat. 284 (2011).......................................................*passim*

**OTHER AUTHORITIES**

157 Cong. Rec. S1360-02 (Mar. 8, 2011)............................................*passim*

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5:

No other appeal in this matter was previously before this Court or any other appellate court.

Plaintiffs-Appellants are not aware of any other cases pending in this Court or any other court that will be directly affected by the Court's decision in this appeal.

# INTRODUCTION

In the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (AIA), Congress created an administrative review process for certain covered business method (CBM) patents. And it established, in Section 18(b), a specialized stay mechanism for patent infringement claims related to ongoing CBM proceedings.

Here, the district court used Section 18(b) not only to stay a patent infringement claim, but also to stay a claim for breach of contract that was joined in the same lawsuit. The court did so notwithstanding its plain acknowledgement (1) that the breach of contract claim is entirely unrelated to the CBM review, (2) that the breach of contract claim was scheduled to go to trial in two and a half months, and (3) that, because the parties are market competitors and the plaintiff seeks injunctive relief, delay will necessarily cause the plaintiff "undue prejudice."

The stay of the contract claim was error. *First*, Section 18(b) of the AIA, which Congress crafted to encourage courts to defer to administrative review of patent validity, does not apply to non-patent claims that are unrelated to the CBM proceeding. Instead, the general standard governing stays—which places a heavy presumption *against* the issuance of a stay— controls whether a court should stay such a non-patent claim unrelated to

a CBM proceeding. The defendants cannot meet that demanding standard here.

*Second*, in the alternative, if the Section 18(b) standard does apply to an unrelated, non-patent claim, the district court erred in its balancing of the relevant factors. Here, the CBM proceeding cannot streamline the contract claim, the trial was imminent, and the plaintiff is a market competitor that is suffering undue prejudice from delay. In these circumstances, a stay of the contract claim is inappropriate.

## JURISDICTIONAL STATEMENT

On August 8, 2014, the district court stayed the breach of contract claim pursuant to Section 18(b) of the AIA. Section 18(b)(2) provides jurisdiction in this Court for an "immediate interlocutory appeal" of such an order. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 2014 WL 3360806, at *2 (Fed. Cir. 2014). Plaintiffs-appellants filed a timely notice of appeal on August 26, 2014.

## ISSUES PRESENTED FOR REVIEW

1) Whether the Court reviews an AIA stay order de novo.

2) Whether Section 18(b) of the AIA, which liberalizes the standard that governs issuance of a stay, applies to a non-patent claim unrelated to the CBM proceeding.

2

3) If Section 18(b) of the AIA does apply to non-patent claims that are unrelated to the patent claim at issue, whether the balance of factors counsels for or against a stay of the breach of contract claim.

## STATEMENT

Plaintiffs-appellants Segin Systems, Inc. and Segin Software, LLC (collectively Segin) developed an innovative, commercially successful software system, now called Rynoh*Live*, that combats fraud in the title insurance industry. Segin worked with defendants-appellees Stewart Title Guaranty Company and PropertyInfo Corporation (collectively Stewart) for many years in the development of this product with the belief that they would jointly market it. To conduct these discussions, Stewart signed strict non-disclosure agreements (NDAs) with Segin that limited its use of Segin's information. But, after Segin rejected a lowball offer by Stewart, Stewart released a competing product, AgencySecure. Segin contends that Stewart created AgencySecure by misusing the confidential information, including algorithms, that Segin provided Stewart. Segin and Stewart are now bitter competitors in the same marketplace, selling rival products.

Segin sued Stewart on two claims: patent infringement and breach of contract. Eight months after Segin filed suit, Stewart lodged a CBM review proceeding. After the PTAB initiated the CBM review, the district

court granted Stewart's motion to stay the patent infringement claim. Segin does not challenge that decision. But the court *also* granted a stay with respect to the breach of contract claim. That decision is at issue here.

## A.    The AIA stay provision.

The AIA established a transitional post-grant review proceeding for certain "covered business method" (CBM) patents. *See* Pub. L. No. 112-29, § 18, 125 Stat. 284. 329. In order to funnel disputes over the validity of these patents to the PTO, Section 18(b) permits a party to seek "a stay of a civil action alleging infringement of a patent," where it "relat[es] to a transitional proceeding for that patent." *Id.* at 331.

> Congress established four factors to guide a stay request:
>
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). Congress derived these factors from *Broadcast Innovation, L.L.C. v. Charter Communications, Inc.*, 2006 WL 1897165 (D. Colo. 2006). *See* 157 Cong. Rec. S1360-02 (Mar. 8, 2011) (statement of Sen. Kyl).

A party "may take an immediate interlocutory appeal" of a stay issued pursuant to this provision, and review of the district court's order "may be de novo." AIA § 18(b)(2).

## B.    Factual allegations.

Richard Reass, a 71-year-old Virginia resident, is a veteran in the title insurance industry. A306. He previously founded Reliant Title Insurance, which was broadly acknowledged as the provider of the first software systems to automate title underwriting and other stages of the title insurance business. *Id*. As a result, Reass drew the attention of the country's leading title insurers. *Id*.

After his success with Reliant Title Insurance, Reass founded Segin in 2004 to tackle a problem that results in hundreds of millions of dollars in annual losses for title insurers—theft, fraud, and mishandling of escrow and settlement funds. A1-2; A303-306. Reass believed that a software solution could help eliminate these losses. Segin's work culminated in an innovative software system, ultimately called Rynoh*Live*. A2. Rynoh*Live* is a comprehensive financial management, fraud prevention, and regulatory oversight system that previously did not exist in the marketplace. A305. Because the software substantially reduces fraud, many title insurance

underwriters now mandate use of such a system. *Id*. Reass's start-up, Segin, is located in Virginia and has ten employees. A302.

Segin carefully protected its invention and novel ideas. It obtained U.S. Patent No. 8,165,939, which is entitled "Method of Settling a Real Estate Transaction and System Implementing the Method" (the '939 Patent) on April 24, 2012. A1-2. It also used non-disclosure agreements (NDAs) when working with partners. A2; A306-309.

As Segin began to develop the ideas that would result in the Rynoh*Live* product, Segin discussed a potential partnership with Stewart—one of the nation's largest title insurers. A306. Segin and Stewart first began conversations in late 2004. *Id*.

In order to conduct these discussions, Segin and Stewart entered into non-disclosure agreements. A306. Among other things, these NDAs required the defendants to "[k]eep in confidence all Confidential Information," including not to use the information "for any purpose other than" the cooperative project with Segin. *Id*. Stewart agreed not to "use the Confidential Information in competition with Segin." A307. The NDAs further provided that "breach of this Agreement will result in immediate and irreparable harm to Segin, for which there will be no adequate remedy at law, and Segin shall be entitled to equitable relief to compel the Recipient

6

to cease and desist all unauthorized use and disclosure of Segin's Confidential Information." A307-308.

Once the NDAs were securely in place, Segin provided highly confidential information regarding the development of Rynoh*Live*, including algorithms, interfaces, connection points, and other information, which together provided a detailed roadmap for developing Rynoh*Live*. A308-309. These communications spanned more than five years, during which time Segin was of the view that it would launch Rynoh*Live* as a joint initiative with Stewart. *Id*. Even after Segin rejected a lowball proposal by Stewart, cooperation continued under the NDAs as Stewart indicated that it intended to finalize the deal. *Id*. Accordingly, Segin provided Stewart additional confidential information, including information on August 21, 2009. A309.

To the astonishment of Segin, in October 2009, Stewart launched a virtual clone of Rynoh*Live*, as one component of a product it termed AgencySecure. A309-311. Stewart developed this product by providing Segin's confidential information to defendant First Banking, which helped Stewart create the software. *Id*.

Segin and Stewart, instead of mutually benefiting from a cooperative relationship as envisioned by the NDAs, are now bitter competitors directly competing for market share with highly similar products. A310-311.

### C.   Proceedings below.

On April 12, 2013, Segin filed suit against defendants in the Eastern District of Virginia. A300-321. Segin asserted two claims: patent infringement and breach of contract. The patent infringement claim contends that defendants' products infringe Segin's '939 Patent.

The breach of contract claim—which is the focus of this appeal— contends that Stewart violated confidentiality obligations imposed by the NDAs. A316-317. The claim is straightforward: Segin provided extensive information to Stewart for use in assessing a licensing and marketing deal relating to Rynoh*Live*, Stewart agreed not to use this information in competition with Segin, but Stewart breached the agreement and used the information to create a clone product that is now a direct competitor. *Id*. Segin thus seeks damages and injunctive relief. A317-320.

Prior to formally serving the complaint, Segin notified defendants as to its filing and invited settlement negotiations. A547-552. After these efforts failed, Segin formally served the complaint on July 25, 2013, and defendants answered the complaint on September 23, 2013. A208-209.

Pursuant to its normal procedure, the district court issued a trial calendar as follows:

- July 28, 2014: Markman hearing.

- September 16, 2014: close of non-expert discovery.

- September 23, 2014: close of expert discovery.

- October 28, 2014: trial.

A30-35.

On December 20, 2013, eight months after learning of Segin's claims, defendants filed a petition with the Patent Trial and Appeal Board (PTAB) for a Covered Business Method review of the '939 Patent. A3. On December 26, 2013, defendants moved for a stay of proceedings. *Id*. The district court denied the motion on March 31, 2014, without prejudice to renew the motion in the event that the PTAB granted review. A1-14.

On July 8, 2014, the PTAB agreed to review the '939 Patent. A24. On July 10, 2014, defendants again sought a stay of the entire proceeding. A17. On July 23, 2014, the district court granted the motion to stay the patent claim, but deferred judgment as to whether it would stay the contract claim. A15-21. On August 8, 2014, the court stayed the contract claim. A22-29. It is that last order that is at issue here.

The court found that because the AIA applies where "a party seeks a stay of a civil action alleging infringement of a patent," the AIA standards govern this dispute. A25-26 (quotation omitted). It thus considered the four factors enumerated by the AIA. A26-28. In so doing, it "incorporate[d] by reference" its prior stay orders. A26.

**Simplification of issues.** The district court concluded that defendants failed to establish that "the validity of the patent will have any effect whatsoever on the breach of contract claim." A27. Instead, the breach of contract "claim will remain and will not be simplified no matter what the outcome of PTAB review." *Id.*

Defendants below argued that the patent and contract claims were "intertwined" because the NDAs do not cover information that becomes public through authorized disclosure, such as, defendants argue, in the course of patent prosecution. But the district court flatly rejected this argument: whether the information at issue was somehow disclosed is nothing more than "a factual matter independent from the validity of the patent." A27.

The court also considered whether a stay of the contract claim would "streamline the trial." A27 (quotation omitted). The court found that, if the patent claim remains following PTAB review, it could "be required to hold

10

two trials." *Id*. For this reason, the court concluded that "the first factor is neutral." *Id*.

**Discovery & trial date.** Although the court noted that "discovery has progressed," and further that the scheduled trial date was only "two and a half months" away, the court nonetheless found that the second factor is "neutral." A27.

The court did not address the considerable discovery efforts by the parties. There can be little dispute that substantial discovery has taken place. Defendants themselves put it plainly in a filing before the district court:

> After searching 27 custodians, Defendants have obtained more than 6 terabytes of electronic data and produced 619,927 documents, totaling almost 4 million pages. Defendants have provided multiple declarations and affidavits from their employees and the discovery vendor identifying, under oath and threat of perjury, which Defendants and affiliates had responsive documents, what search terms were run …, and from what Defendant or affiliate every produced document originated. Defendants' discovery vendor has charged more than $560,000 for this work. Defendants have also served five privilege logs identifying 570 privileged communications or protected attorney work product.

Dist. Ct. Dkt. No. 103, at 1. Defendants characterize their production as "mammoth," and their vendor reviewed material "equivalent to more than half the printed collection of the Library of Congress." *Id*. at 2-4. (emphasis omitted). In defendants' estimation, they "have addressed and corrected all

issues regarding their document production;" in their view, Segin has what it needs for trial. *Id.*

**Prejudice and tactical advantage.** The court found that Segin and defendants are "direct competitors," and thus a stay will cause Segin "undue prejudice as a result of delay." A27. And this is "particularly so because a decision from the PTAB is not expected until at least the middle of next year." *Id.* The court therefore concluded that the prejudice factor "weighs against a stay." *Id.*

**Burden of litigation.** Finally, the court found that the fourth factor "weighs strongly in favor of a stay." A28. This stemmed primarily from the prospective "need for a second trial." *Id.* The court also thought that it may be required to distinguish between discovery disputes relevant to the contract claim from the patent claim, and it further noted that some witnesses may have to be deposed twice. *Id.*

## SUMMARY OF THE ARGUMENT

The district court's grant of a stay with respect to Segin's contract claim, which is entirely unrelated to the CBM proceeding, was error.

I.   The Court reviews the district court's AIA stay order de novo. Section 18(b)(2) of the AIA expressly provides a right to interlocutory appeal, where review "may be de novo." AIA § 18(b)(2). Congress purposeful-

Case: 14-1786    Document: 14    Page: 22    Filed: 09/12/2014

ly displaced existing law (i.e., an abuse of discretion standard) in favor of de novo review in order to eliminate forum shopping.

II. The district court erred in applying Section 18(b) to a non-patent claim that is unrelated to the CBM proceeding. In the AIA, Congress put a thumb on the scale in favor of staying *patent* claims that may be affected by a CBM proceeding; it did so to permit the PTAB to adjudicate the validity of those patents before they form the basis of litigation. This permissive approach towards the grant of a stay does not apply, however, to a non-patent claim unrelated to a CBM proceeding. Such claims are instead subject to the typical standard that governs a stay request, which requires the proponent of the stay to demonstrate that delay is necessary to avoid prejudice. Measured against the correct standard, Stewart's request to stay the contract claim must be rejected.

What is more, the approach taken below would have dangerous repercussions if approved by this Court. Because the district court interpreted Section 18(b) to apply to unrelated, non-patent claims, the inevitable result is that, in the future, plaintiffs will split their claims, filing state law claims in state court so as to avoid overbroad application of the AIA stay mechanism.

13

III. Even if Section 18(b) does govern this unrelated, non-patent claim, the district court erred. As the district court acknowledged, the CBM proceeding will have no bearing on the breach of contract claim. Discovery with respect to that claim is nearly complete and—before the trial court's August 8, 2014, stay order—the trial was scheduled to begin on October 28, 2014. Moreover, Segin and Stewart are now bitter competitors; having misappropriated Segin's confidential information, Stewart markets a similar product to the same clients.

## ARGUMENT

## I.    Review Of An AIA Stay Order Is De Novo.

This Court must review the district court's order pursuant to Section 18(b) de novo. The statute itself provides that "review" in this Court "may be de novo." AIA § 18(b)(2). This is a circumstance where "the question of what is the standard of appellate review is answered by relatively explicit statutory command." *Pierce v. Underwood*, 487 U.S. 552, 558 (1988).

The statute's use of the term "may" does not alter the result. There must be a consistent standard of review that applies in all cases; the Court cannot pick, on a case-by-case, panel-by-panel basis, which standard it will apply. The term "may" permits the Court to define a category of exception-

al cases—such as when a litigant abuses the appellate right through serial appeals—where it may instead use an abuse of discretion standard.

*First*, Section 18(b)(2) demonstrates a deliberate adoption by Congress of a de novo standard of review. In construing statutory language, the Court must presume that Congress legislates with knowledge of, and a purpose regarding, then-existing law. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). Prior to the AIA, the prevailing law was clear: a court of appeals typically reviews a district court's order regarding a stay for abuse of discretion. *See*, *e.g.*, *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 845, 848-49 (Fed. Cir. 2008). The AIA thus constitutes a departure from then-existing law, and such departures must be interpreted as intentional. *See Rodriguez v. United States*, 480 U.S. 522, 525 (1987). Indeed, as the Court has previously noted, "the only standard mentioned in the statute is *de novo* review." *VirtualAgility*, 2014 WL 3360806, at *2. Per the plain statutory language, review is de novo.

*Second*, this interpretation is confirmed by the legislative history. Senator Schumer explained that "[o]n appeal the Federal Circuit can and should review the district court's decision" with respect to an AIA stay "de novo." 157 Cong. Rec. S1364. In fact, "[a] de novo review is central to the

15

purpose of the interlocutory appeal provision" as it "ensure[s] consistent application of standards and precedents across the country and to avoid one particular court" from becoming a magnet jurisdiction. *Id*. This explicit congressional "goal"—"doctrinal coherence"—is "advanced by independent appellate review." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 234 (1991).

*Third*, the term "may" has a plain purpose in the statute. As explained by Senator Schumer, "[i]t is *expected* that the Federal Circuit will review the district court's decision regarding a stay de novo, *unless* there are unique circumstances militating against a de novo review, such as subsequent requests for an interlocutory appeal in the same case." 157 Cong. Rec. S1364 (emphasis added). Therefore, Section 18(b)(2) requires a de novo standard of review, unless there is some kind of exceptional circumstance—such as where a litigant abuses the interlocutory appeal process and files seriatim appeals.

## II.   The District Court's Use Of Section 18(b) To Stay An Unrelated, Non-Patent Claim Was Error.

The purpose of Section 18(b) is clear: it is designed to funnel litigation over the validity of certain business method patents to the PTAB and to preclude duplicative litigation in district court. Congress was motivated by the scourge of non-practicing entities, i.e., patent trolls, that impose substantial costs on the economy. *See* 157 Cong. Rec. S1360-02.

16

In granting the stay here, the district court fundamentally misunderstood the scope of Section 18(b). Contrary to the court's conclusion (A25), it does *not* apply to unrelated, non-patent claims that are joined in the same litigation as a patent infringement claim subject to CBM review. Instead, when a party wishes to stay such an unrelated, non-patent claim, the standards controlling a *typical* stay request apply—not the permissive standards of Section 18(b). Outside the AIA context, stays are substantially disfavored: the proponent of a stay bears a heavy burden to prove that, *absent a stay*, it will suffer significant prejudice. Because that standard cannot be met here, the stay entered below was error.

While this Court should review the decision below de novo (*see supra*, 14-16), "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) (quotation omitted).

1. Typically, there is a heavy presumption *against* a stay of litigation. It is fundamental that "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).

As the Supreme Court has stated in no uncertain terms, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (same); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (same). It has long been settled that "the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on" the proponent. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936).

This stems from the principle that, unless a proponent of a stay can show "undue prejudice" or "interference with his constitutional rights," "there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Louis Vuitton Malletier*, 676 F.3d at 97 (quotation omitted). Because a court has a duty "to prevent the ossification of rights which attends inordinate delay" (*Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 203 (5th Cir. 1983) (quotation omitted), the proponent of a stay "must state a clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004).

In short, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. If a party cannot demonstrate "hardship or inequity," the stay should

be denied. *See, e.g.*, *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) ("When applying for a stay, a party must show 'a clear case of hardship or inequity' if 'even a fair possibility' exists that the stay would damage another party."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (same).

2. In the AIA, Congress substantially altered the governing standards for a stay with respect to claims related to a CBM proceeding. Instead of applying the normal standard, which treats stays with great skepticism, Congress placed "a very heavy thumb on the scale in favor of a stay being granted." 157 Cong. Rec. S1363 (statement of Sen. Schumer). Although a stay is not mandatory (*see Benefit Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*, 2013 WL 3296230, at *2 n.3 (D. Del. 2013)),[1] patent claims related to a CBM proceeding will often be stayed under Section 18(b). *See VirtualAgility*, 2014 WL 3360806.

The AIA's alteration of governing standards for a stay does not extend to unrelated, non-patent claims contained within the same lawsuit.

*First*, the statute itself is directed to patent claims "relating to a transitional proceeding for that patent." AIA § 18(b)(1). The statute makes

---

[1]  Congress has, by contrast, made other stays mandatory, such as a mandatory stay with respect to proceedings before the International Trade Commission. 28 U.S.C. § 1659.

plain its purpose: a court should generally defer to the PTAB's resolution of patent validity before a patent infringement claim proceeds. The statute does not, however, cover unrelated, non-patent claims. This point is underscored by the legislative history; the basis for the stay provision, Congress explained, is that "[l]itigation over *invalid patents* places a substantial burden on U.S. courts and the U.S. economy." 157 Cong. Rec. S1363 (statement of Sen. Schumer) (emphasis added). Because the CBM process "is designed to provide a cheaper, faster alternative to district court litigation over the *validity of business-method patents*," the PTO review process "should be used instead of, rather than in addition to, civil litigation." *Id.* (emphasis added). Those objectives do not implicate unrelated, non-patent claims.

*Second*, staying unrelated, non-patent claims will prejudice a plaintiff without any off-setting benefit. For a plaintiff, effective relief means timely relief. *See CTF Hotel Holdings*, 381 F.3d at 139. That is especially so where, like here, the defendant is a competitor and the plaintiff seeks injunctive relief; when parties are direct competitors, stays may be particularly dangerous for the claimant. *See VirtualAgility*, 2014 WL 3360806, at *9. A stay of an unrelated, non-patent claim thus will generally pose a heavy cost on a plaintiff. While the cost is stark, there is no counterbalanc-

ing value: unrelated claims will require, at some point, discovery and attention from the trial court. Because the "balance" here between "the need for the stay against the countervailing interests" will typically weigh against delay, there is no basis for a broad rule that permissively stays unrelated, non-patent claims. *Cherokee Nation v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997).

*Third*, the approach below—which stayed what the court acknowledged as an unrelated, non-patent claim—will cause severe *inefficiencies*. Staying such claims will have a predictable result: instead of joining state law claims in a federal lawsuit, a plaintiff will file two *separate* lawsuits. In the future, a plaintiff would file state law claims in state court, and then pursue patent infringement in federal court. That way, if the patent infringement claim is stayed, the state law claim will nonetheless proceed. The inefficiency of such an approach is manifest: it will burden two courts, require two separate sets of discovery, and necessitate the costs of two parallel proceedings. This is plainly contrary to the purpose of the AIA, which is designed to "limit the incentive to forum shop." 157 Cong. Rec. S1380 (statement of Sen. Kyl). But if federal courts are unduly closed to claimants, parties will turn to forums that permit non-patent claims to proceed.

3. Here, because (as the district court expressly found, *see* A27) the breach of contract claim is entirely unrelated to the CBM proceeding, the traditional approach to staying a claim—not the AIA—controls Stewart's request to delay the contract claim.

Stewart cannot meet this heavy standard. The district court did not point to any "hardship or inequity" (*Landis*, 299 U.S. at 255) that Stewart would bear from continuing the litigation with respect to the breach of contract claim. And no such showing is possible: because Stewart will have to litigate the claim at some point, *when* it does so has little relevance. Stewart's generalized interest in delay—an interest common to every defendant—is certainly no basis to demonstrate "hardship or inequity." That is, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.

The issue was put plainly by the district court: the *only* basis on which the court thought a stay appropriate was the possible burden on the judicial system that could result from a second trial. This basis—the "burden of litigation"—is precisely the concept that Congress injected into the AIA to liberalize the grant of stays *relating to CBM-covered patent claims* because, as Congress recognized, the burden of litigation is generally an

*insufficient* basis for a stay. See 157 Cong. Rec. S1364 (statement of Sen. Schumer). Indeed, outside the context of the AIA, "the interests of judicial economy alone are insufficient to justify such an indefinite stay." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1265 (11th Cir. 2000); *see also Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (holding that "case management standing alone is not necessarily a sufficient ground to stay proceedings"). Thus, when the AIA framework is set aside, the basis for the district court's stay of the contract claim vanishes.

This approach gains support from the analogous context of pre-AIA reexaminations, where district courts would often stay only patent claims, permitting non-patent claims to proceed. In *Photoflex Products, Inc. v. Circa 3 LLC,* 2006 WL 1440363, at *2 (N.D. Cal. 2006), for example, the district court denied a stay as to claims "completely unrelated to patent infringement." (Quotation omitted). Likewise, in *Panduit Corp. v. HellermannTyton Corp.,* 2004 WL 1898954, at *3-4 (N.D. Ill. 2004), the district court declined to stay a breach of contract claim pending PTO reexamination.

District courts frequently deny a stay with respect to an unrelated, non-patent claim. *See, e.g., Cameras Onsite, LLC v. Digital Mgmt. Solu-*

*tions, Inc.*, 2010 WL 1268054. at *5 (S.D. Tex. 2010) ("Plaintiff's breach of contract claim is unrelated to its patent claim, and Defendants have failed to show that a stay of that separate cause of action is justified."); *Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615, at *8 (D. Minn. 2007) (denying stay where "claim turns in no way upon the precise scope of the claims of the patents or even upon the continuing existence of those patents"); *In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 538 (E.D. Pa. 2003).[2] The widespread view of district courts, that unrelated, non-patent claims should not be delayed by a PTO reexamination, properly balances the interests at stake.

---

[2]  Outside the context of the AIA, district courts often denied a stay in the entirety due to the presence of non-patent claims. *See, e.g., Procter & Gamble Co. v. Team Techs., Inc.*, 2014 WL 533494, at *4 (S.D. Ohio 2014) (denying stay where "even if the PTO were to cancel every claim at issue . . . , Plaintiff's suit to stop Defendants from allegedly infringing [plaintiff's non-patent] claims would be unaffected"); *Nippon Steel & Sumito Metal Corp. v. POSCO*, 2013 WL 1867042, at *7 (D.N.J. 2013) (denying stay and noting that "claims unrelated to patent infringement will not be stayed during a patent reexamination"); *Shurtape Techs., LLC v. 3M Co.*, 2013 WL 789984, at *3 (W.D.N.C. 2013); *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351-52 (D. Mass. 2011); *ePlus, Inc. v. Lawson Software, Inc.*, 2010 WL 1279092, at *3 (E.D. Va. 2010); *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 WL 4452118, at *3-4 (N.D. Cal. 2008). Although Segin does not urge that result here, this general practice further underscores the importance of permitting unrelated, non-patent claims to continue during the pendency of reexamination proceedings.

For these reasons, the district court erred in finding that Section 18(b) applies to the breach of the contract. Further, because Stewart cannot satisfy the substantial burden it must in order to delay litigation with respect to the contract claim, a stay is improper.

## III. Alternatively, The District Court Erred In Its Weighing Of The Section 18(b) Factors, Regardless Of The Standard Of Review.

Even if, contrary to our submission, the standards of Section 18(b) *do* apply to unrelated, non-patent claims, the district court erred in granting a stay of the breach of contract claim. Under the AIA, four factors control whether a court should grant a stay:

1) whether a stay "will simplify the issues in question and streamline the trial,"

2) "whether discovery is complete and whether a trial date has been set,"

3) "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party," and

4) "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court."

AIA § 18(b)(1). Taken together, the factors weigh overwhelmingly against a stay of the breach of contract claim at issue here.

Although, for reasons we have explained, review is de novo (*see supra*, 14-16), the district court's decision would nonetheless flunk abuse of

25

discretion review. Like *VirtualAgility*, the factors here "weigh heavily" and are not susceptible to multiple interpretations. 2014 WL 3360806, at *11. And abuse of discretion review, in the context of a stay motion, has real teeth, as an improperly granted stay may cause substantial harm to a litigant. *See*, *e.g.*, *Dependable Highway Express*, 498 F.3d at 1067; *Cherokee Nation*, 124 F.3d at 1418. To the extent the district court had discretion here, it abused it.

### A.    The CBM will not simplify the breach of contract claim.

The first factor—whether a stay "will simplify the issues in question and streamline the trial"—weighs heavily *against* a stay of the breach of contract claim.

The district court properly concluded that Segin's breach of contract claim—that defendants breached the non-disclosure agreements—is entirely unrelated to its patent infringement claim. "Defendants have not shown," the court explained, "that the PTAB proceeding will have any impact on the breach of contract claim." A27. This claim, therefore, "will remain and will not be simplified no matter what the outcome of PTAB review." *Id.*

Below, defendants tried to tie the contract and patent claims by contending that whatever material Segin made public in the course of prose-

26

cuting its patent would be unprotected by the NDAs. But the district court easily dispatched this argument: even if true, it "does not establish that a ruling from the PTAB as to the validity of the patent will have any effect whatsoever on the breach of contract claim." A26-27. Stewart's contention is merely "a factual matter independent from the validity of the patent." A27. Indeed, Segin provided scores of information to Segin, at issue in the breach of contract claim, that was not relevant to the patent prosecution.

The factual predicate in this case is thus clear: the breach of contract claim is entirely unrelated to the CBM proceeding, and it will exist in identical format even if the PTAB invalidates all relevant claims in the '939 Patent. The district court's conclusion was correct thus far. (It is no surprise that the breach of contract claim here is entirely distinct from the patent claim. Unrelated, non-patent claims are often joined in a patent infringement action. *See, e.g., Photoflex Prods.,* 2006 WL 1440363, at \*2; *In re Laughlin Prods.,* 265 F. Supp. 2d at 538.)

But the district court wrongfully concluded that a stay could "streamline the trial," reasoning that, if the patent claims survive, there was a prospect that the court may be "required to hold two trials." A27. On this basis, the court concluded that the first factor was "neutral." *Id.*

This conclusion was wrong. To begin with, the CBM proceeding *cannot* streamline or simplify the trial as it relates to the *breach of contract* claim. Unlike *VirtualAgility*, where the "CBM review could dispose of the entire litigation," which is "the ultimate simplification of issues," the CBM will do nothing at all with respect to the contract claim at issue here. 2014 WL 3360806, at *5.

Moreover, the court was wrong to consider the possibility of two trials under the *first* prong. This prong focuses on whether the outcome of the CBM proceeding will, or will not, simplify the issues immediately before the court—which, here, is the contract claim. To be sure, the *fourth* factor—which considers "burden of litigation on the parties and on the court" (AIA § 18(b)(1)(D))—may consider the prospect of multiple trials. To the extent that the AIA applies at all, this is a consideration that may be in the mix. But, as this Court held, these factors are "separate, individual factors," which a court may not "collapse." *VirtualAgility*, 2014 WL 3360806, at *5.

## B. Discovery is nearly complete and a trial date was set.

The second factor—the extent of discovery and the pendency of a trial date—also weighs heavily against a stay. This lawsuit was filed on April 12, 2013, defendants did not move to stay the proceedings until December

26, 2013, the PTAB granted the CBM review on July 8, 2014, and the court did not grant a stay of the contract claim until August 8, 2014. A24.

Three considerations show this factor weighs heavily against a stay. *First*, defendants waited nearly eight months after the lawsuit was filed before they sought a CBM proceeding. Such delay "cuts against granting a stay." *Freeny v. Apple Inc.*, 2014 WL 3611948, at *2 (E.D. Tex. 2014).[3]

*Second*, discovery is nearly complete as it relates to the breach of contract claim. The parties have produced millions of pages of documents, they have exchanged written discovery requests and responses, and they have filed over half a dozen substantive motions. As Stewart itself made clear in its filings in the district court, the parties have engaged in "mammoth" amounts of discovery in this case, with Stewart's third-party discovery vendor having "collected and processed more than 6 terabytes of electronic data." Dist. Ct. Dkt. No. 103, at 1-4. Thus, the discovery costs associated with litigating this case have already been spent.

*Third*, the trial was merely "two and a half months" away at the time the court issued its stay of the contract claim. A27. While the district

---

[3]  Defendants will complain that Segin waited three months to formally serve the complaint. Segin, however, alerted Stewart to the complaint via a demand letter immediately after filing it, and Segin sought a non-judicial resolution of its claims. A547-552. Once alerted to the lawsuit, Stewart could have immediately sought CBM review. It did not do so.

court found this factor "neutral" (*id.*)—apparently under the view that a trial less than three months away was somehow not imminent—the immediacy of the trial weighs heavily against granting a stay.

The status of the litigation, particularly the pending trial date, thus shows that a stay is improper. In *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, 2014 WL 3736514, at *2 (E.D. Tex. 2014), Judge Bryson explained that where "the bulk of the discovery proceedings have not yet occurred" and "[t]he trial date is approximately eight months off," the timing consideration "cuts *slightly* in favor of issuing a stay." (Emphasis added). Here, by contrast, the bulk of the discovery proceedings are complete, and the trial was less than three months away. Judge Bryson's view in *Loyalty Conversion* thus strongly supports weighing this factor against a stay in these circumstances.

Indeed, because the breach of contract claim would have been tried in October 2014, this is a circumstance where "the [c]ourt and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013) (quotation omitted). District courts, considering stays of litigation pending reexami-

nations, place heavy emphasis on this factor, regularly denying a stay when a trial is near. *See, e.g.*, *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *3 (E.D. Va. 2010) ("the advanced nature of a case approaching trial may weigh heavily against granting a stay") (quotation omitted); *I-Flow Corp. v. Apex Med. Techs., Inc.*, 2008 WL 2078623, at *3 (S.D. Cal. 2008) (finding that status of case weighed against a stay where the claim construction proceeding was approaching); *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 WL 34368283, at *2 (D. Del. 2001) (denying stay where trial was four months away).

## C.    A stay substantially prejudices Segin.

The third factor—which focuses on whether a stay would "unduly prejudice" Segin—also weighs heavily against a stay of the contract claim. There can be little dispute on this point: even though it granted the stay, the district court acknowledged that Segin and defendants are "direct competitors" and Segin is therefore "likely to suffer undue prejudice as a result of delay." A27. Prejudice is "particularly" apparent "because a decision from the PTAB is not expected until at least the middle of next year." *Id*. The court thus found that this factor "weighs against a stay." *Id*.

The court was correct in this finding. Segin and defendants are competitors in the same industry—Stewart markets and sells a product that

Segin contends is a virtual clone of its product, made with the very algorithms and ideas that Segin created. As the district court found, Stewart is "currently marketing and licensing" AgencySecure "'to Rynoh*Live*'s main customers (various title agencies) at a lower price than that charged for Rynoh*Live*.'" A10. Segin introduced "an advertisement for Agency Secure" (*id*.), which demonstrated the features of the product. A543-545.

Moreover, Segin is a small, ten-employee company, with a 71 year-old president and founder. Because the stay is in force, Stewart is currently using—and will continue to use—misappropriated information to draw on Segin's goodwill and unfairly steal market share. And market share is particularly important for the product at issue here, as it is a subscription service that customers automatically renew. A stay of litigation will, as the district court plainly found, unduly prejudice Segin.

That the litigants are competitors weighs heavily in the prejudice analysis. In *VirtualAgility*, the Court "agree[d]" "that competition between parties can weigh in favor of finding undue prejudice." 2014 WL 3360806, at *9. This principle has been repeated in scores of lower court decisions, as "courts are generally reluctant to stay proceedings where parties are direct competitors." *Netlist, Inc. v. Smart Storage Sys., Inc.*, 2014 WL 4145412, at *3 (N.D. Cal. 2014) (quotation omitted). *See, e.g., Asetek Hold-*

*ings, Inc. v. Cooler Master Co.*, 2014 WL 1350813, at \*5 (N.D. Cal. 2014) ("Courts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise."); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, 2013 WL 6021324, at \*5 (N.D. Cal. 2013) (Because parties "are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant."); *Cooper Techs. Co. v. Thomas & Betts Corp.*, 2008 WL 906315, at \*1-2 (E.D. Tex. 2008) (delay prejudices "direct competitors").

These significant issues are compounded by the fact that, "[w]ith the passage of time, memories will fade, litigation costs will balloon, and resolve will dwindle." *Cherokee Nation*, 124 F.3d at 1418. Delay thus makes it difficult for a party "to retool for litigation" when the stay is lifted. *Id*. This is a significant factor showing why a party has "a compelling interest in proceeding with their suit without delay." *Id*. Passage of time here will thus necessarily injure Segin. *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC,* 2011 WL 836673, at \*3 (D. Md. 2011) (noting that, as time passes, cases "can become more difficult to try because witnesses re-

locate, documents are lost, and memories fade"); *Benefit Funding,* 2013 WL 3296230, at *2 ("Plaintiffs will suffer some prejudice from a stay, due to . . . the possibility of necessary witnesses' memories fading.").

The "undue prejudice" factor substantially weighs against a stay, both because Segin and Stewart are competitors in the marketplace with respect to a similar product and because the passage of time will prejudice Segin's ability to prosecute its claim. At bottom, a stay should generally be denied "'if there is even a fair possibility that the stay . . . will work damage to some one else,'" unless there is "a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255). Here, there is certainly a "'fair possibility' that the stay will 'work damage'" to Segin, and Stewart cannot show "hardship or inequity." *Id*. This is thus a particularly powerful ground on which the Court should reject a stay with respect to the breach of contract claim.

### D.    A stay will not reduce the burden of litigation.

The final factor—the burden of litigation—is best viewed as neutral. There is no doubt that the parties will, at some point, litigate the breach of contract claims. The private and public resources will therefore be expended regardless of the timing. The only aspect that could weigh in favor of a

stay is the prospect of two trials, should any of the patent claims survive the CBM review.

This factor is nonetheless best viewed as neutral for the simple reason that, if unrelated, non-patent claims are stayed in these circumstances, it will encourage future litigants to split their claims and pursue state law claims in state court. *See supra*, 21-22. That result would be grossly inefficient, as it would magnify the burden on courts and parties, requiring multiple suits where just one would do. The approach taken below, if approved by this Court, would thus *increase* the systemic litigation burden—not reduce it.

Moreover, the district court's fear of multiple trials is speculative. The PTAB could—as defendants vigorously urge in the CBM proceedings—invalidate the relevant claims. In that event, no efficiency whatsoever is worked by a stay.

\*    \*    \*

Three factors strongly counsel against a stay: 1) resolution of the CBM process will do nothing to streamline the breach of contract claim, 2) the contract claim was on the cusp of trial and discovery was nearly complete, and 3) Segin will—as the district court expressly recognized—suffer "undue prejudice" by the passage of time. While each factor alone is a suf-

ficient ground to deny Stewart's requested stay, together they provide an overwhelming basis to reject a stay of the contract claim.

The only factor that could weigh in favor of a stay is the speculative possibility that a second trial would result. But this factor should not count at all because, if the Court approves the decision below, the inevitable result is that plaintiffs will split their claims to ensure timely resolution, thus undoing the very efficiency that the AIA stay provision is meant to engender. And even if the prospect of a second trial deserves some consideration, it is decisively outweighed by the other factors.

In sum, the "balance" of factors here weighs overwhelmingly against a stay. *Cherokee Nation*, 124 F.3d at 1418. The stay entered below will be "protracted and indefinite," and it will impose a "heavy burden[]" on Segin. *Id*. By contrast, the need for a stay here is, at most, "slight." *Id*. Stewart certainly cannot show any prejudice that would result from litigating the contract claim in the normal course. The factors thus tilt overwhelmingly towards permitting Segin to proceed with its claim.

## CONCLUSION

The Court should reverse the order of the district court that stayed the breach of contract claim pending the CBM proceeding.

Dated: September 12, 2014

By: _____/s/_____
    A. John P. Mancini
    MAYER BROWN LLP
    1675 Broadway
    New York, NY 10019
    Tel: 212-506-2500
    Fax: 212-262-1910
    jmancini@mayerbrown.com

    Paul W. Hughes
    MAYER BROWN LLP
    1999 K St. NW
    Washington, DC 20006
    Tel: 212-506-2500
    Fax: 212-262-1910
    phughes@mayerbrown.com

    *Counsel for Plaintiffs-Appellants*
    *Segin Systems, Inc. and Segin*
    *Software LLC*

**Addendum**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

MAR 3 1 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**SEGIN SYSTEMS, INC.,**
and
**SEGIN SOFTWARE, LLC**
**d/b/a RYNOHLIVE,**

       **Plaintiffs,**

       **v.**                         **CIVIL ACTION NO. 2:13cv190**

**STEWART TITLE GUARANTY COMPANY,**
**PROPERTYINFO CORPORATION,**
and
**FIRST BANKING SERVICES, INC.,**

       **Defendants.**

### *MEMORANDUM OPINION & ORDER*

    Before the Court is Defendants' Joint Motion to Stay.  ECF No. 43.  Plaintiffs developed, own, and employ a patented real estate settlement fraud prevention software system.  Eight months after Plaintiffs filed this suit against Defendants for patent infringement and breach of contract, Defendants filed a petition for a review of the patent at issue with the Patent Trial and Appeal Board of the United States Patent and Trademark Office.  Shortly thereafter, Defendants filed the instant motion asking the Court to stay this action pending that review pursuant to section 18(b) of the America Invents Act.  For the reasons stated below, Defendants' Joint Motion is **DENIED WITHOUT PREJUDICE** to renew it.

### I. FACTUAL AND PROCEDURAL HISTORY

    On April 24, 2012, the U.S. Patent and Trademark Office ("PTO") issued a patent to

1

Plaintiff Segin Software entitled "Method of Settling a Real Estate Transaction and System Implementing the Method." Compl. ¶ 50. Plaintiff Segin Systems had designed the patented software system as a method of combating and detecting fraud in the real estate settlement field. Compl. ¶¶ 10-11. It launched the system, called Rynoh*Live*, in early 2009. Compl. ¶ 12. Plaintiff Segin Software, LLC is a subsidiary of Plaintiff Segin Systems and now owns the rights to the patent. Compl. ¶ 17.

When this software system was in its early development stages in 2004, one of the founders of Segin Systems communicated with Defendant Stewart Title Guaranty Company ("Stewart Title") about the project. Compl. ¶ 22. Shortly thereafter, the parties entered into Nondisclosure Agreements to restrict the disclosure of information about the project. Compl. ¶¶ 23-24. The parties continued to meet and discuss the prospect of Defendant Stewart Title purchasing the rights to use Rynoh*Live*. Compl. ¶¶ 30-31. Stewart Title made an offer in 2008, which Segin Systems rejected. Compl. ¶¶ 32-33. In late 2009, Stewart Title launched its own real estate settlement technology system developed by Defendant First Banking Services ("FBS"). Compl. ¶ 37. Plaintiffs now contend that system is an infringing "clone" of Rynoh*Live* that directly competes with it, and that Stewart Title passed on the information it learned about Plaintiffs' patented system to FBS so that FBS could develop the competing system. Compl. ¶¶ 36-38.

On April 12, 2013, Segin Systems and Segin Software filed a complaint against Stewart Title, PropertyInfo Corporation, and FBS for patent infringement and breach of contract. Defendants were served with the complaint on or about July 25, 2013. Joint Mot. to Stay 3. Plaintiffs allege that all three Defendants have infringed and continue to infringe the patent. They also raise a breach of contract claim against Stewart Title and its affiliate PropertyInfo Corporation, and allege that those two Defendants breached and continue to breach the

2

A2

Nondisclosure Agreements. On September 23, 2013, Defendants filed their Answers to the Complaint generally denying the allegations. Defendants Stewart Title and PropertyInfo also raised counterclaims seeking a declaration that the patent is invalid. Defendant FBS filed an Amended Answer on October 15, 2013 that raised a similar counterclaim, and on November 18, 2013, Plaintiffs filed their answer to the counterclaims.

On December 26, 2013, Defendants filed the instant Motion to Stay. They noted that on December 20, 2013, they had filed a petition with the Patent Trial and Appeal Board ("PTAB") of the PTO challenging the validity of all claims of the patent pursuant to 35 U.S.C. §§ 101 & 112. Joint Mot. to Stay 4. A Rule 16(b) scheduling conference was held on January 13, 2014. The Scheduling Order set the *Markman* hearing for July 28, 2014, the completion of discovery (except as to expert witnesses) for September 16, 2014, and the trial for October 28, 2014. ECF No. 51. The day after the scheduling conference, Plaintiffs filed their Opposition to the Motion to Stay, ECF No. 50, and Defendants filed their replies on January 17, 2014, ECF No. 52. This matter is accordingly ripe for disposition.

## II. LEGAL STANDARD

As the movants seeking a stay, Defendants bear the burden of demonstrating that a stay is warranted. *E.g.*, *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013). The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), provides for PTO review of covered business method ("CBM") patents. Section 18 of the AIA, effective as of September 16, 2012, provides the relevant standard for a stay pending that review. When a party has filed for review of the validity of a covered business method ("CBM") patent and then seeks a stay of a civil action alleging infringement of that patent,

3

A3

the court shall decide whether to enter a stay based on—
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). Parties may file an immediate interlocutory appeal of the court's decision to grant or deny the stay motion in the United States Court of Appeals for the Federal Circuit. *Id.*

As multiple district courts have noted, the first three prongs of this statutory test replicate the same three factors many courts previously applied to determine whether to stay a civil action pending a review or reexamination by the PTO. *E.g.*, *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-11, 2014 WL 94371 at *2 (E.D. Tex. Jan. 9, 2014); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489. Accordingly, the Court will consider both AIA and non-AIA cases, as relevant, in specifically assessing the first three factors of this test. However, more generalized statements about the propriety of stays in non-AIA cases are of limited or no relevance in the analysis required in this case, because Congress also added a new fourth factor to the traditional test: whether a stay would reduce the burden of litigation. Courts generally have agreed that this factor is designed to place a thumb on the scales in favor of a stay. *E.g.*, *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893, 2013 WL 6912688 at *2 (W.D. Tex. June 20, 2013); *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 489-90. The Court agrees with this conclusion, because a stay will in many cases actually reduce the burden of litigation; therefore, the new fourth factor will usually weigh to some degree in favor of a stay.

Nonetheless, although it easily could have done so, Congress did not provide for an automatic stay in the statutory text. And the statute does not, for example, use language that

4

directs courts to grant a stay unless a specific condition or conditions were satisfied. The Court therefore declines to rely on statements in the legislative history emphasized by Defendants that state that a stay should almost always be granted, as such sentiments are not reflected in the statutory text. *See, e.g.*, Joint Mot. to Stay 5 ("It is congressional intent that a stay should only be denied in extremely rare circumstances." (quoting 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)). *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009) (legislative history cannot override statutory text). Instead, the Court will apply each of the four factors individually in light of the individual circumstances of the case at hand. *See VirtualAgility, Inc.*, 2014 WL 94371 at *2. Moreover, the Court observes that not all of the legislative history weighs in Defendants' favor, because it also describes the review program as "designed to provide a cheaper, *faster* alternative to district court litigation over the validity of business-method patents." *See* 157 Cong. Rec. S1360-02 (2011) (emphasis added). In this case, the scheduled trial would likely take place months before the PTAB concludes its review. Pltfs' Br. in Opp. to Joint Mot. to Stay, ECF No. 50 (hereinafter "Opp."), at 12.

## III. ANALYSIS

### A. Issue Simplification

The first factor is "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." AIA § 18(b)(1)(A). Defendants note that their CBM review petition challenges the validity of every claim in the patent. Joint Mot. to Stay 6. Further, the validity of those claims is an issue that all Defendants have raised as defenses and counterclaims. If the PTAB agrees to review Defendants' petition, a decision it will reach no later than June 20, 2014 (less than three months from now), *id.* at 4, a stay pending that review would reduce the number of

5

disputed issues whether or not the review ultimately concludes that the patent is valid. This is because the validity of claims that the PTAB deems invalid would not be re-litigated in the context of Plaintiffs' patent infringement claim. And any claims that it finds valid would also be resolved for the purposes of this action, because Defendants would be precluded from challenging the validity of such claims after PTAB review. AIA § 18(a)(1)(D). Therefore, at least some of the issues of invalidity raised in Defendants' answers and counterclaims would be simplified by a stay if the PTAB agreed to review the patent.

Nonetheless, the critical question is not whether PTAB review would simplify the issues in question, but whether a stay of this action would do so. At this stage, it is difficult to predict the impact of a stay because it is completely unknown whether or not that review will occur. *See Benefit Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*, Civ. No. 12-801, 2013 WL 3296230 (D. Del. June 28, 2013) (denying without prejudice to renew a stay motion in the event the PTAB grants review where "[t]he PTAB has not yet determined whether to undertake CBM review . . . and may not do so for another three months"). The Court is unable to determine at this juncture how likely it is that PTAB will conclude that "it is more likely than not that at least one of the claims challenged in the petition is unpatentable," a finding that the PTAB must make before granting review therefore grant review. 37 C.F.R. § 42.208(c). On the one hand, Defendants claim that CBM review is granted 80% of the time. Reply Br. of Defts. Stewart Title and PropertyInfo, ECF No. 53, at 9. But on the other hand, Plaintiffs note that unlike many CBM patents, the patent in this case was subject to an extensive review during patent prosecution, beginning in 2007 and ending in 2012. Opp. 16. According to Plaintiffs, during that review, the issues of invalidity that Defendants have raised in the PTAB were comprehensively addressed. *Id.*

6

**A6**

Not only is it unknown whether or not the PTAB will grant review, any resulting simplification of the issues would be only moderate. First, in addition to the patent infringement claim, Plaintiffs have brought a breach of contract claim against two of the Defendants (Stewart Title and PropertyInfo). Defendants observe that this is a state law claim subject to supplemental jurisdiction and would likely be dismissed if the patent infringement claim were dismissed. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). Reply Br. of FBS, ECF No. 52, at 7-8. Nonetheless, Plaintiffs' patent infringement claim will remain viable as long as the PTAB does not invalidate every claim of the patent. Therefore, so will the breach of contract claim. Second, Plaintiffs note that Defendants raise invalidity arguments in their Answers that they have not raised in their CBM petition. Opp. 10. Accordingly, unless the PTAB finds every claim of the patent invalid, some invalidity issues will remain. When claims will or are likely to remain after PTO review, district courts have frequently found that a stay will do little to simplify the issues at stake. *E.g.*, *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2010 WL 1279092 at *3 (E.D. Va. Mar. 31, 2010); *Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781, 2008 WL 4452118 at *3-*4 (N.D. Cal. Oct. 3, 2008); *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07-CV-1200, 2008 WL 2078623 at *2 (S.D. Cal. Apr. 15, 2008).

In sum, because of the substantial uncertainties existing at this stage, the first factor weighs only slightly in favor of staying the action.

## B. Progress of the Litigation

The second factor is "whether discovery is complete and whether a trial date has been set." AIA § 18(b)(1)(B). Courts have found that a stay in the early stages of a case tends to maximize the efficient use of judicial resources and prevent duplicative or wasted efforts issues that are

7

ultimately resolved by PTO review.  *E.g.*, *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 494.  The

trial date in this case has been set, pursuant to the Rule 16(b) Scheduling Order, for October 28,

2014.  ECF No. 51.  However, discovery has only recently begun, and is scheduled to be

completed by September 16, 2014 (with the exception of discovery pertaining to expert witnesses).

*Id.*  As of mid-January, Plaintiffs had served document requests and interrogatories.  Opp. 11.

The Court also observes that the *Markman* hearing is set for July 28, 2014.  In fact, the only

Scheduling Order deadlines that will occur prior to the PTAB's deadline for indicating whether it

will grant review relate to the *Markman* hearing.  Briefing on claim construction is due on June

20, 2014, the same day as the deadline for the PTAB's decision.  ECF No. 51.

Although Plaintiffs filed their Complaint nearly a year ago, this case is, as described above,

still in its moderately early stages.  Nonetheless, if the Court granted a stay now, the established

trial date would undoubtedly be significantly delayed, even if the PTAB ultimately declined to

review the case and the Court lifted the stay at that point.  Further, the Court concludes that

declining to grant a stay at this juncture will not create undue inefficiency or waste of resources.

By the time the PTAB decides whether it will take up review of the patent, discovery will still be at

least three months from completion.  And although preparations for the *Markman* hearing will

have been substantially completed by then, the Court notes that the parties' preparation and

briefing for that hearing will overlap to some extent with the efforts they must undertake before the

PTAB.  Therefore, the *Markman* preparations will not be entirely duplicative if the Court were to

grant a motion to stay at a later date.  *See Versata Software*, 2013 WL 6912688, at *3 (noting that

"the PTAB conducts its own claim construction as part of the CBM Review program, and thus this

Court's efforts in construing the claims may go to waste or be duplicative of the PTAB's own

findings").

8

A8

Balancing the early stages of discovery with the Rule 16(b) schedule and the fact that this case has been pending for nearly a year, the Court finds that the second factor is neutral.

## C. Prejudice to Plaintiffs and Tactical Advantage to Defendants

The third factor is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." AIA § 18(b)(1)(C). The parties vigorously dispute whether or not Plaintiffs and Defendants are direct competitors, a circumstance that courts frequently find creates undue prejudice. *E.g.*, *VirtualAgility, Inc.*, 2014 WL 94371, at *5. Plaintiffs claim that they "and Defendants offer the only two real estate settlement products on the market of this nature, and compete head-to-head for the business of the same customer base of underwriters and title agencies." Opp. 13. Defendants did not address whether or not they were direct competitors with Plaintiffs in their Motion to Stay, but they do in their Reply Briefs. In its Reply, FBS (who allegedly developed the potentially competing software) states that there is no evidence that it is Plaintiffs' direct competitor. Reply Br. of FBS 9. In their Reply, Defendants Stewart Title and PropertyInfo argue that the Complaint indicates that their allegedly competing product was used only by them through 2012 and therefore could not have competed with Plaintiffs during that timeframe. Further, they state that even if there is competition, it is not based on Plaintiffs' patented product. Reply Br. of Defts. Stewart Title and PropertyInfo 7-8.

The Court initially observes that the "ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Although the Court will still consider Defendants' arguments because they can be considered responses to the argument in Plaintiffs' Opposition as to direct competition, the Court proceeds with caution

9

because it has not had the benefit of Plaintiffs' response to these specific points.

Defendants' first argument is that they do not directly compete with Plaintiffs. Parties are direct competitors if they sell similar products to similar customers or in similar markets. *E.g.*, *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 900 (E.D. Mo. 2009). In this instance, there is little dispute that Defendants' product, AgencySecure, is sufficiently similar to Plaintiffs' product, Rynoh*Live*. The Complaint alleges that AgencySecure is "a real estate settlement technology, the primary component of which is a Rynoh*Live* clone that FBS allegedly 'developed' for Stewart." Compl. ¶ 37. *See also* Compl. ¶ 43 ("The settlement software utilized in AgencySecure was and is identical to Rynoh*Live* in all material respects."). Defendants do not dispute this characterization of the similar nature of the products in their stay filings. They do dispute, however, whether they offer AgencySecure for sale to similar marketplaces. According to the Complaint, FBS developed AgencySecure and then agreed to a three-year exclusivity contract with Stewart Title, which lasted from 2009 to 2012. *Id.* ¶¶ 38-39. After that expired, however, the Complaint states only that "FBS *intends* to expand AgencySecure beyond Stewart and launch it across the market." *Id.* ¶ 40 (emphasis added). It also claims that at an AgencySecure product demonstration (apparently in 2012), FBS claimed that AgencySecure works "just like" Rynoh*Live*. *Id.* ¶ 45.

These facts alone are insufficient to show that Defendants and Plaintiffs are currently direct competitors. But Plaintiffs' Opposition includes more information. It states that Stewart Title and/or FBS are currently marketing and licensing AgencySecure "to Rynoh*Live*'s main customers (various title agencies) at a lower price than that charged for Rynoh*Live*." Opp. 4. As support for this allegation, Plaintiffs attached an advertisement for AgencySecure, offered by Stewart and copyrighted as of 2013 to Stewart. Opp., Ex. E. Defendants ignore this Exhibit in their replies,

10

**A10**

and therefore have provided the Court with little reason to question it. Accordingly, the Court concludes that Plaintiffs have sufficiently shown, for the purposes of this motion, that they and Defendants are direct competitors.

Stewart Title and PropertyInfo further contend that even if there is competition, it is not based on a product that is covered by Plaintiffs' patent, and therefore granting a stay would not cause Plaintiffs undue prejudice. The rationale for finding undue prejudice where parties are direct competitors is that the delay resulting from a stay "will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SensoRx, Inc. v. Hologic, Inc.*, Civ. No. 12-173, 2013 WL 144255 at *5 (D. Del. Jan. 11, 2013). Where the competition between the parties is unrelated to the subject of the patent infringement suit, then this rationale would potentially have less force, as a delay in the unrelated patent infringement suit would likely not cause prejudice. Specifically, Defendants Stewart Title and PropertyInfo note that the patent describes five modules within Rynoh*Live*. The fifth one is called the "Disbursement Module," or Rynoh +. *See* Opp., Ex. D, at 1. Defendants observe that the current version of Rynoh*Live*, as described in the Complaint and on Rynoh's website, Opp., Ex. A, appears to omit that module and instead use a module entitled "RynohSecure." RynohSecure enables the customer to continuously monitor and audit account activity, Compl. ¶ 14, whereas Rynoh+ is a "complete funds receipt and disbursement subsystem." Opp., Ex. D.

Especially without the benefit of Plaintiffs' argument on this point, the Court declines to resolve at this early juncture whether Rynoh*Live* (or its current iteration) is "covered" by the disputed patent, a substantive issue that could have significant implications for the merits of this suit. The Court simply observes that because the first four modules as described in the patent and

11

the Complaint appear to be identical and because the overall functioning of the product as described in the patent and the Complaint appear similar, the Court is able to conclude that a delay in the resolution of Plaintiffs' claims poses a substantial risk of undue prejudice to Plaintiffs.

The third factor also directs an inquiry into whether the moving party would gain a clear tactical advantage by a stay. Plaintiffs contend that Defendants would because 1) Defendants have not raised all of their invalidity defenses before the PTAB, 2) witnesses and evidence will become less reliable as time passes, 3) Plaintiffs would be deprived of their chosen forum, and 4) Defendants have shown no hardship or inequity. Opp. 15-19. Plaintiffs also described the extensive review process that they have already undergone, but the Court found that more appropriate to address in the context of the first factor, as discussed above.

Only Plaintiffs' first argument is successful. That Defendants may have two separate opportunities in two separate forums to challenge the validity of Plaintiffs' patent does raise a concern of an unfair tactical advantage, giving them two bites of the apple as to a central defense. As to Plaintiffs' second contention regarding witnesses and evidence, Plaintiffs provide no detail and specific examples, and do not explain how this factor would favor Defendants and not Plaintiffs. Accordingly, they have not shown how any additional delay would give Defendants a "clear" tactical advantage. The Court concludes that Plaintiffs' last argument is irrelevant because the AIA does not mention requiring Defendants to show hardship or inequity to justify a stay. Plaintiffs' third argument fails for the same reason, as the AIA explicitly contemplates that the nonmoving party will be deprived of their chosen forum, and that such deprivation will provide a benefit to judicial efficiency.

Because Plaintiffs are likely to suffer undue prejudice the later that their suit is resolved, and because Defendants will obtain a tactical advantage from a stay, the Court concludes that the

12

A12

third factor weighs strongly in favor of denying a stay.

## D. Burden of Litigation

Finally, the AIA requires the Court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D). Much of the analysis conducted under the first factor is relevant here, as the streamlining of issues will generally serve to reduce the burden of litigation on the parties and on the Court. The Court will incorporate that analysis by reference here. Beyond that, however, an additional consideration is relevant in considering the burden of litigation on the Court because the Motion to Stay was filed before the PTAB indicated whether or not it would review Plaintiffs' patent. If the Court were to stay this action now and the PTAB were to decline review, the overall effect would be to increase the burden on the Court's resources, as it would likely have to hold another Rule 16(b) scheduling conference and rewrite the scheduling order to account for the delay in discovery, *Markman* hearing briefings. The trial date would also likely be substantially delayed. On the other hand, entering a stay now could reduce the burden of litigation if the PTAB did decide to review the patent. For these reasons, the Court concludes that the fourth factor weighs slightly in favor of a stay.

## IV. CONCLUSION

In sum, the first and fourth factors weigh slightly in favor of a stay, the second factor is neutral, and the third factor weighs strongly against a stay. Therefore, Defendants' Joint Motion to Stay is **DENIED**. Given the uncertainty surrounding whether or not the PTAB will review the disputed patent, Defendants' Motion to Stay is simply premature. *See Transunion Intelligence LLC v. Search Am., Inc.*, No. 11-CV-1075, 2014 WL 753781, at *3 (D. Minn. Feb. 26, 2014)

13

**A13**

(noting that it was to the movant's credit that "it did not seek a stay until the PTAB *granted*

review"). The best course in light of the current circumstances is to proceed with this case as

scheduled. The denial of a stay is, however, **WITHOUT PREJUDICE** to Defendants to renew

the Motion to Stay when and if the PTAB grants review.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**


Norfolk, Virginia
March    , 2014

Raymond A. Jackson
**United States District Judge**

14

**A14**



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**SEGIN SYSTEMS, INC.,**
**and**
**SEGIN SOFTWARE, LLC**
**d/b/a RYNOHLIVE,**

      **Plaintiffs,**

      **v.**                                 **CIVIL ACTION NO. 2:13cv190**

**STEWART TITLE GUARANTY COMPANY,**
**PROPERTYINFO CORPORATION,**
**and**
**FIRST BANKING SERVICES, INC.,**

      **Defendants.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendants' Renewed Joint Motion to Stay. ECF No. 128. Plaintiffs developed, own, and employ a patented real estate settlement fraud prevention software system. Eight months after Plaintiffs filed this suit against Defendants for patent infringement and breach of contract, Defendants filed a petition for a review of the covered business method patent at issue with the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB"). Shortly thereafter, Defendants filed their first stay motion asking the Court to stay this action pending that review pursuant to section 18(b) of the America Invents Act. Reasoning that it was unknown whether that review would occur, the Court denied Defendants' first stay motion without prejudice to renew it. The PTAB has since indicated that it will review all claims of the patent, and Defendants filed the instant motion requesting that this action be stayed pending that review. For the reasons stated below, Defendants' Renewed Joint Motion to Stay is

1

**A15**

**GRANTED IN PART AND DEFERRED IN PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

On April 24, 2012, the U.S. Patent and Trademark Office ("PTO") issued a patent to Plaintiff Segin Software entitled "Method of Settling a Real Estate Transaction and System Implementing the Method." Compl. ¶ 50. Plaintiff Segin Systems had designed the patented software system as a method of combating and detecting fraud in the real estate settlement field. Compl. ¶¶ 10-11. It launched the system, called Rynoh*Live*, in early 2009. Compl. ¶ 12. Plaintiff Segin Software, LLC is a subsidiary of Plaintiff Segin Systems and now owns the rights to the patent. Compl. ¶ 17.

When this software system was in its early development stages in 2004, one of the founders of Segin Systems communicated with Defendant Stewart Title Guaranty Company ("Stewart Title") about the project. Compl. ¶ 22. Shortly thereafter, the parties entered into Nondisclosure Agreements to restrict the disclosure of information about the project. Compl. ¶¶ 23-24. The parties continued to meet and discuss the prospect of Defendant Stewart Title purchasing the rights to use Rynoh*Live*. Compl. ¶¶ 30-31. Stewart Title made an offer in 2008, which Segin Systems rejected. Compl. ¶¶ 32-33. In late 2009, Stewart Title launched its own real estate settlement technology system developed by Defendant First Banking Services ("FBS"). Compl. ¶ 37. Plaintiffs now contend that system is an infringing "clone" of Rynoh*Live* that directly competes with it, and that Stewart Title passed on the information it learned about Plaintiffs' patented system to FBS so that FBS could develop the competing system. Compl. ¶¶ 36-38.

On April 12, 2013, Segin Systems and Segin Software filed a complaint against Stewart Title, PropertyInfo Corporation, and FBS for patent infringement and breach of contract. Defendants were served with the complaint on or about July 25, 2013. Joint Mot. to Stay 3.

2

**A16**

Plaintiffs allege that all three Defendants have infringed and continue to infringe the patent. They also raise a breach of contract claim against Stewart Title and its affiliate PropertyInfo Corporation, and allege that those two Defendants breached and continue to breach the Nondisclosure Agreements. On September 23, 2013, Defendants filed their Answers to the Complaint generally denying the allegations. Defendants Stewart Title and PropertyInfo also raised counterclaims seeking a declaration that the patent is invalid. Defendant FBS filed an Amended Answer on October 15, 2013 that raised a similar counterclaim, and on November 18, 2013, Plaintiffs filed their answer to the counterclaims.

On December 26, 2013, Defendants filed their first Motion to Stay. After the matter was fully briefed, on March 31, 2014, the Court entered a Memorandum Opinion & Order denying the motion without prejudice to renew it should the PTAB agree to review the disputed patent. On July 10, 2014, Defendants filed a Notice indicating that on July 8, 2014, the PTAB instituted a covered business method review of all claims of the patent at issue, finding that "it is more likely than not that the challenged claims are unpatentable." ECF No. 127. They also filed the instant Renewed Joint Motion to Stay, ECF No. 128, and accompanying Memorandum. The Court set an abbreviated deadline for the Response in light of the upcoming *Markman* hearing, and also indicated that no Reply was necessary. Plaintiff filed a Response on July 18, 2013. The matter is accordingly fully briefed and ripe for disposition.

## II. LEGAL STANDARD

As the movants seeking a stay, Defendants bear the burden of demonstrating that a stay is warranted. *E.g.*, *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013). The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), provides for PTO review of covered business method ("CBM") patents. Section 18

3

of the AIA, effective as of September 16, 2012, provides the relevant standard for a stay pending

that review.   When a party has filed for review of the validity of a covered business method

("CBM") patent and then seeks a stay of a civil action alleging infringement of that patent,

> the court shall decide whether to enter a stay based on—
>> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>> (B) whether discovery is complete and whether a trial date has been set;
>> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).   Parties may file an immediate interlocutory appeal of the court's decision to

grant or deny the stay motion in the United States Court of Appeals for the Federal Circuit.   *Id.*

As multiple district courts have noted, the first three prongs of this statutory test replicate

the same three factors many courts previously applied to determine whether to stay a civil action

pending a review or reexamination by the PTO.   *E.g.*, *VirtualAgility, Inc. v. Salesforce.com, Inc.*,

2:13-CV-11, 2014 WL 94371 at *2 (E.D. Tex. Jan. 9, 2014); *Market-Alerts Pty. Ltd.*, 922 F. Supp.

2d at 489.   Accordingly, the Court will consider both AIA and non-AIA cases, as relevant, in

specifically assessing the first three factors of this test.   However, more generalized statements

about the propriety of stays in non-AIA cases are of limited or no relevance in the analysis required

in this case, because Congress also added a new fourth factor to the traditional test: whether a stay

would reduce the burden of litigation.   Courts generally have agreed that this factor is designed to

place a thumb on the scales in favor of a stay.   *E.g.*, *Versata Software, Inc. v. Volusion, Inc.*, No.

A-12-CA-893, 2013 WL 6912688 at *2 (W.D. Tex. June 20, 2013); *Market-Alerts Pty. Ltd.*, 922 F.

Supp. 2d at 489-90.   The Court agrees with this conclusion, because a stay will in many cases

actually reduce the burden of litigation; therefore, the new fourth factor will usually weigh to some degree in favor of a stay.

Nonetheless, although it easily could have done so, Congress did not provide for an automatic stay in the statutory text. And the statute does not, for example, use language that directs courts to grant a stay unless a specific condition or conditions were satisfied. The Court therefore declines to rely on statements in the legislative history emphasized by Defendants that state that a stay should almost always be granted, as such sentiments are not reflected in the statutory text. *See, e.g.*, Joint Mot. to Stay 5 ("It is congressional intent that a stay should only be denied in extremely rare circumstances." (quoting 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)). *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009) (legislative history cannot override statutory text). Instead, the Court will apply each of the four factors individually in light of the individual circumstances of the case at hand. *See VirtualAgility, Inc.*, 2014 WL 94371 at *2. Moreover, the Court observes that not all of the legislative history weighs in Defendants' favor, because it also describes the review program as "designed to provide a cheaper, *faster* alternative to district court litigation over the validity of business-method patents." *See* 157 Cong. Rec. S1360-02 (2011) (emphasis added). In this case, the trial is scheduled for October 28, 2014, whereas the PTAB's decision is not expected until the middle of 2015. ECF No. 132, at *13.

### III. ANALYSIS

The Court hereby incorporates by reference its prior discussion of the four factors in its March 31, 2014 Order declining a stay. The Court concluded then that the first and fourth factors weigh slightly in favor of a stay, the second factor is neutral, and the third factor weighs strongly against a stay. As to Plaintiffs' patent infringement claim and Defendants' associated

5

counterclaims, the Court concludes that a stay pending PTAB review is warranted. The third factor (undue prejudice and clear tactical advantage) still weighs strongly against a stay. Although discovery has progressed and the parties have completed their *Markman* briefings, the Court concludes that the second factor remains neutral given the remaining matters to be conducted and that the parties are still five months from the scheduled trial. The first and fourth factors, however, now weigh strongly in favor of a stay. Although PTAB review may not eliminate the need for a trial on Count 1 and Defendants' counterclaims, it will at the least surely simplify the issues which the Court must address. In the Court's experience, patent infringement actions consume a great deal of judicial resources, and any simplification will have a substantial impact. Accordingly, Defendants' Renewed Joint Motion to Stay is **GRANTED** as to Count 1 and associated counterclaims.

In their Response, Plaintiffs have argued in the alternative that the Court should at a minimum decline to stay the breach of contract claim (Count 2), which will not be affected by the outcome of PTAB review and which Plaintiffs brought pursuant to this Court's supplemental jurisdiction. Compl. ¶ 7 (citing 28 U.S.C. § 1367). In light of the precedent Plaintiffs cite and other precedent of which the Court is aware, the Court finds that further briefing on whether Count 2 should also be stayed is appropriate. *E.g.*, *Gryphon Networks Corp. v. Contact Center Compliance Corp.*, 792 F. Supp. 2d 87 (D. Mass. 2011) (staying only the patent claim); *Card Technology Corp. v. Datacard Corp.*, 2007 WL 551615 (D. Minn. Feb. 21, 2007) (staying only the patent counterclaims and allowing counterclaim brought under supplemental jurisdiction to proceed). Therefore, Defendants' Renewed Joint Motion to Stay is **DEFERRED** as to Count 2. Defendants are **DIRECTED** to file a Reply Brief addressing this matter within **SEVEN (7) DAYS** of the date of this Order.

6

**A20**

## IV. CONCLUSION

For the reasons stated above, Defendants' Renewed Joint Motion to Stay is **GRANTED IN PART**, as to Count 1 of the Complaint and associated counterclaims, and **DEFERRED IN PART**, as to Count 2 of the Complaint. Further, Defendants are **DIRECTED** to file a Reply Brief addressing whether Count 2 should also be stayed within **SEVEN (7) DAYS** of the date of this Order.

All matters in the Rule 16(b) scheduling order which pertain solely to Count 1 and associated counterclaims are hereby **STAYED**. All other matters necessary to resolve Count 2 shall proceed as scheduled until the Court resolves the entirety of Defendants' Renewed Joint Motion to Stay.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 23 , 2014

Raymond A. Jackson
United States District Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

SEGIN SYSTEMS, INC.,
and
SEGIN SOFTWARE, LLC
d/b/a RYNOHLIVE,

      **Plaintiffs,**

      **v.**                    **CIVIL ACTION NO. 2:13cv190**

STEWART TITLE GUARANTY COMPANY,
PROPERTYINFO CORPORATION,
and
FIRST BANKING SERVICES, INC.,

      **Defendants.**

## *MEMORANDUM OPINION & ORDER*

Before the Court is Defendants' Renewed Joint Motion to Stay.   ECF No. 128.   Plaintiffs developed, own, and employ a patented real estate settlement fraud prevention software system. Eight months after Plaintiffs filed this suit against Defendants for patent infringement and breach of contract, Defendants filed a petition for a review of the covered business method patent at issue with the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB").   Shortly thereafter, Defendants filed their first stay motion asking the Court to stay this action pending that review pursuant to section 18(b) of the America Invents Act.   Reasoning that it was unknown whether that review would occur, the Court denied Defendants' first stay motion without prejudice to renew it.   The PTAB has since indicated that it will review all claims of the patent, and Defendants filed the instant motion requesting that this action be stayed pending that review.   The Court granted a stay of the patent infringement count, but ordered further

1

**A22**

briefing as to whether the breach of contract claim should be stayed. That briefing is now complete, and for the reasons stated below, Defendants' Renewed Joint Motion to Stay is now **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 24, 2012, the U.S. Patent and Trademark Office ("PTO") issued a patent to Plaintiff Segin Software entitled "Method of Settling a Real Estate Transaction and System Implementing the Method." Compl. ¶ 50. Plaintiff Segin Systems had designed the patented software system as a method of combating and detecting fraud in the real estate settlement field. Compl. ¶¶ 10-11. It launched the system, called Rynoh*Live*, in early 2009. Compl. ¶ 12. Plaintiff Segin Software, LLC is a subsidiary of Plaintiff Segin Systems and now owns the rights to the patent. Compl. ¶ 17.

When this software system was in its early development stages in 2004, one of the founders of Segin Systems communicated with Defendant Stewart Title Guaranty Company ("Stewart Title") about the project. Compl. ¶ 22. Shortly thereafter, the parties entered into Nondisclosure Agreements to restrict the disclosure of information about the project. Compl. ¶¶ 23-24. The parties continued to meet and discuss the prospect of Defendant Stewart Title purchasing the rights to use Rynoh*Live*. Compl. ¶¶ 30-31. Stewart Title made an offer in 2008, which Segin Systems rejected. Compl. ¶¶ 32-33. In late 2009, Stewart Title launched its own real estate settlement technology system developed by Defendant First Banking Services ("FBS"). Compl. ¶ 37. Plaintiffs now contend that system is an infringing "clone" of Rynoh*Live* that directly competes with it, and that Stewart Title passed on the information it learned about Plaintiffs' patented system to FBS so that FBS could develop the competing system. Compl. ¶¶ 36-38.

On April 12, 2013, Segin Systems and Segin Software filed a complaint against Stewart

2

Title, PropertyInfo Corporation, and FBS for patent infringement and breach of contract. Defendants were served with the complaint on or about July 25, 2013. Joint Mot. to Stay 3. Plaintiffs allege that all three Defendants have infringed and continue to infringe the patent. They also raise a breach of contract claim against Stewart Title and its affiliate PropertyInfo Corporation, and allege that those two Defendants breached and continue to breach the Nondisclosure Agreements. As the jurisdictional basis for the state law breach of contract claim, the Complaint cites only this Court's supplemental jurisdiction. 28 U.S.C. § 1367.

On September 23, 2013, Defendants filed their Answers to the Complaint generally denying the allegations. Defendants Stewart Title and PropertyInfo also raised counterclaims seeking, *inter alia*, a declaration that the patent is invalid. Defendant FBS filed an Amended Answer on October 15, 2013 that raised a similar counterclaim, and on November 18, 2013, Plaintiffs filed their answer to the counterclaims.

On December 26, 2013, Defendants filed their first Motion to Stay. After the matter was fully briefed, on March 31, 2014, the Court entered a Memorandum Opinion & Order denying the motion without prejudice to renew it should the PTAB agree to review the disputed patent. On July 10, 2014, Defendants filed a Notice indicating that on July 8, 2014, the PTAB instituted a covered business method review of all claims of the patent at issue, finding that "it is more likely than not that the challenged claims are unpatentable." ECF No. 127. They also filed the instant Renewed Joint Motion to Stay, ECF No. 128, and accompanying Memorandum, ECF No. 129. The Court set an abbreviated deadline for the Response in light of the upcoming *Markman* hearing, and also indicated that no Reply was necessary. After Plaintiff filed a Response in Opposition, ECF No. 132, the Court entered an order staying the patent infringement claim (Count 1) and deferring ruling on the breach of contract claim (Count 2) pending Defendants' Reply addressing

3

that issue.  Defendants have now filed replies, ECF Nos. 140, 141, and the matter is accordingly

ripe for disposition.

Additionally, after Defendants filed their Reply as directed, Plaintiffs filed a Motion for

Leave to File a Surreply and supporting Memorandum.  ECF Nos. 144, 145.

## II. LEGAL STANDARD

As the movants seeking a stay, Defendants bear the burden of demonstrating that a stay is

warranted.  *E.g.*, *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90

(D. Del. 2013).  The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat.

284 (2011), provides for PTO review of covered business method ("CBM") patents.  Section 18

of the AIA, effective as of September 16, 2012, provides the relevant standard for a stay pending

that review.  When a party has filed for review of the validity of a covered business method

("CBM") patent and then seeks a stay of a civil action alleging infringement of that patent,

> the court shall decide whether to enter a stay based on—
> (A) whether a stay, or the denial thereof, will simplify the issues in question and
> streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving
> party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the
> parties and on the court.

AIA § 18(b)(1).  Parties may file an immediate interlocutory appeal of the court's decision to

grant or deny the stay motion in the United States Court of Appeals for the Federal Circuit.  *Id.*

The Court notes that it finds that the above standard applicable even now that it is only

considering whether to stay a single claim that does not allege patent infringement.  The AIA

applies where "a party seeks a stay of a civil action alleging infringement of a patent," and this is

such a civil action, even though it is composed of multiple claims.  *See also Ethicon, Inc. v.*

4

A25

*Quigg,* 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (discussing the inherent power of a court to stay a

case in order to efficiently manage its docket).

### III. ANALYSIS

The Court hereby incorporates by reference its prior discussions of the four factors in its

two prior stay orders. ECF Nos. 73, 139.

An analysis of the first factor, whether staying the state law breach of contract claim "will

simplify the issues in question and streamline the trial," turns in part on the extent of any

interdependence between the two claims. If the PTAB's potential resolution of the validity of the

patent would have no impact on the outcome of the breach of contract claim, then this factor would

weigh against a stay because allowing the PTAB to proceed first would not simplify the breach of

contract matter. If, however, the validity of the patent would resolve an issue within the breach of

contract claim, then a stay would simplify the issues in question. *See Nippon Steel & Sumito*

*Metal Corp. v. POSCO,* 2013 WL 1867042, at *8 (D.N.J. May 2, 2013) (stay is not appropriate

where claims merely share a common nucleus of operative facts because the claims "do not depend

on the validity of the patent in any way").

Recognizing the importance of this issue, the parties vigorously dispute the extent of the

overlap of the two claims. Plaintiffs claim that the "breach of contract claim is entirely separate

from, and in no way predicated upon, [the] patent claim." ECF No. 132, at 21. By contrast,

Defendants contend that the two claims are "inseparable" ECF No. 140, at 5. Specifically, they

emphasize that the non-disclosure agreements that are the subject of the breach of contract claim

exclude information which "[i]s or becomes publicly available through authorized disclosure"

from the definition of "confidential information." Information that Plaintiffs or their

predecessors disclosed when applying for the patent will therefore not be protected. But this does

5

not establish that a ruling from the PTAB as to the validity of the patent will have any effect

whatsoever on the breach of contract claim.   It may indeed be relevant what information was

disclosed, but that is a factual matter independent from the validity of the patent.   Defendants

have not shown that the PTAB proceeding will have any impact on the breach of contract claim

(outside of potentially duplicative discovery, which will be addressed in the context of the fourth

factor, below); therefore, that claim will remain and will not be simplified no matter what the

outcome of PTAB review.

However, the Court must also consider whether a stay will "streamline the trial."   If the

Court did not stay the breach of contract claim, and if the PTAB does not find that all claims of the

disputed patent are invalid, then the Court will be required to hold two trials.   Moreover, the Court

concludes that a partial stay will increase, rather than simplify, the issues in dispute, because the

Court will be required to adjudicate which contested discovery matters pertain to which claim and

to which parties (as the breach of contract claim was not brought against FBS).   In light of all of

the considerations with respect to the first factor, the Court concludes that the first factor is neutral.

Although discovery has progressed since the Court's first order and the parties have now

completed their *Markman* briefings, the Court concludes that the second factor remains neutral

given the remaining matters to be conducted and that the parties are still two and a half months

from the scheduled trial.   ECF Nos. 73, 139.

The third factor (undue prejudice and clear tactical advantage) now weighs against a stay,

but no longer strongly against a stay.   The Court previously found that Plaintiffs are likely to

suffer undue prejudice as a result of delay because they are Defendants' direct competitors.   This

is still true, and is particularly so because a decision from the PTAB is not expected until at least

the middle of next year.   ECF No. 132, at 13.   However, the Court also relied on a clear tactical

6

advantage because Defendants would potentially have two separate forums in which to challenge the validity of the patent. ECF No. 73, at 12. This is not a relevant consideration with respect to the breach of contract claim. Accordingly, the third factor weighs against a stay.

As to the fourth factor, the Court concludes that it weighs strongly in favor of a stay. The Court recognizes that it has inherent interest "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). However, allowing the case to progress in a piecemeal fashion will increase the burden of litigation in this case. *Versata Software, Inc. v. Dorado Software, Inc.*, 2:13-CV-00920-MCE, 2014 WL 1330652 (E.D. Cal. Mar. 28, 2014). Even if the PTAB finds that all claims of the patent are invalid, obviating the need for a second trial and for any further proceedings as to the patent infringement claim, the Court will still have to expend resources adjudicating the discovery disputes between the parties. This is because discovery has already been contentious and if the contract claim were to go forward, the Court would in addition be required to adjudicate which discovery matters pertain to the breach of contract claim and which do not. *See Regents of the Univ. of Mich. v. St. Jude Medical, Inc.*, No. 12-12908, 2013 WL 2393340, at *3 (E.D. Mich. May 31, 2013). Moreover, the parties may have to duplicate some remaining discovery matters, such as deposing witnesses twice who have information as to both claims. ECF No. 140, at 5. The fourth factor therefore weighs strongly in favor of a stay.

In sum, the first and second factors are neutral, the third factor weighs against a stay, and the fourth factor weighs strongly in favor of a stay. Therefore, the balance of the factors weighs in favor of a stay of the breach of contract claim, and Defendants' Renewed Joint Motion to Stay is therefore **GRANTED**.

7

**A28**

## IV. CONCLUSION

For the reasons stated above and in the Court's July 23, 2014 Order, Defendants' Renewed

Joint Motion to Stay, ECF No. 128, is **GRANTED.**

Plaintiffs have not demonstrated good cause warranting filing a Surreply.   This matter has

been adequately briefed.   Accordingly, their Motion for Leave to File, ECF No. 142, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**


_____ /s/

Norfolk, Virginia
August  7  , 2014

Raymond A. Jackson
United States District Judge

8

**A29**

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2014, I served the foregoing Opening Brief of Appellants on each party separately represented via the Court's electronic Pacer/ECF system.


Dated: September 12, 2014                    /s/ A. John P. Mancini
                                             A. John P. Mancini

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 7,842 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: September 12, 2014                 /s/ A. John P. Mancini
                                          A. John P. Mancini