No. 2014-1786

I N T HE

# United States Court of Appeals for the Federal Circuit

―――――――――

SEGIN SYSTEMS, INC. and
SEGIN SOFTWARE, LLC (d/b/a RYNOHLIVE),

*Plaintiffs-Appellants,*

v.

STEWART TITLE GUARANTY COMPANY, PROPERTYINFO
CORPORATION, and FIRST BANKING SERVICES, INC.

*Defendants-Appellees.*

―――――――――

Appeal from the United States District Court for the Eastern District of
Virginia in No. 2:13-cv-00190 RAJ-TEM, Judge Raymond Alvin Jackson

―――――――――

## BRIEF FOR APPELLEES

―――――――――

W. RYAN SNOW
CRENSHAW WARE & MARTIN, PLC
150 West Main Street, Suite 1500
Norfolk, VA 23510
(757) 623-3000


Counsel for Appellee First Banking
Services, Inc.


October 27, 2014

JONATHAN S. FRANKLIN
MARK EMERY
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466


Counsel for Appellees Stewart Title
Guaranty Company and PropertyInfo
Corporation

# CERTIFICATE OF INTEREST

Counsel for appellees Stewart Title Guaranty Company and PropertyInfo

Corporation certifies the following:

1.     The full name of every party or amicus represented by me is:

Stewart Title Guaranty Company and PropertyInfo Corporation

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Stewart Title Guaranty Company is a wholly owned subsidiary of Stewart Information Services Corporation.  PropertyInfo Corporation is an indirect wholly owned subsidiary of Stewart Information Services Corporation.  No publicly held corporation owns 10% or more of Stewart Information Services Corporation's stock.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Brett Ashley McKean, David M. Foster, George W. Jordan, III, Jayme Partridge, Jon Collins Rice, Jonathan S. Franklin and Mark Emery of Fulbright & Jaworski LLP

Dated:  October 27, 2014          /s/ Jonathan S. Franklin
                                  Jonathan S. Franklin
                                  FULBRIGHT & JAWORSKI LLP
                                  801 Pennsylvania Ave., N.W.
                                  Washington, D.C.  20004
                                  (202) 662-0466

                                  Counsel for Stewart Title Guaranty
                                  Company and PropertyInfo Corporation

## CERTIFICATE OF INTEREST

Counsel for appellee First Banking Services, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

First Banking Services, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

n/a

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

W. Ryan Snow, David C. Hartnett and Darius K. Davenport of Crenshaw, Ware & Martin, P.L.C. and John P. Doyle


Dated:  October 27, 2014          /s/ W. Ryan Snow
                                  W. Ryan Snow
                                  CRENSHAW, WARE & MARTIN, P.L.C.
                                  150 W. Main Street, Suite 1500
                                  Norfolk, VA 23510
                                  (757) 623-3000

                                  Counsel for First Banking Services, Inc.

# TABLE OF CONTENTS

**Page**

CERTIFICATES OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ........................................................................v

STATEMENT OF RELATED CASES .........................................................x

INTRODUCTION .........................................................................................1

STATEMENT OF JURISDICTION..............................................................2

RELEVANT STATUTORY PROVISIONS ..................................................3

STATEMENT OF THE ISSUES...................................................................4

STATEMENT OF THE CASE.......................................................................4

STATEMENT OF THE FACTS ....................................................................6

      A.     Segin's Overlapping Allegations Of Patent Infringement
And Misappropriated Intellectual Property ..............................6

      B.     The District Court's Stay Of The Civil Action.........................9

SUMMARY OF THE ARGUMENT ...........................................................14

ARGUMENT ..............................................................................................15

    I.     THE DECISION TO STAY THE BREACH OF CONTRACT
CLAIM SHOULD BE REVIEWED FOR ABUSE OF
DISCRETION ...............................................................................15

    II.    THE STAY PROPERLY EXTENDED TO THE NON-
PATENT CLAIM..........................................................................23

      A.     Segin Waived The Argument That A Section 18(b) Stay
Cannot Include Allegedly Unrelated Non-Patent Claims........23

      B.     The District Court Properly Exercised Its Authority
Under AIA § 18(b) By Staying The Entire Civil Action.........26

           1.     A Section 18(b) Stay May Extend To All Claims.........27

           2.     Segin's Non-Patent Claim Is Related To Its Patent
Claim................................................................................30

           3.     Segin's Policy Arguments Are Immaterial And
Mistaken ........................................................................32

    III.    THE DISTRICT COURT DID NOT ERR IN GRANTING A
STAY..............................................................................................37

|       |                                                                                                      |      |
|-------|------------------------------------------------------------------------------------------------------|------|
| A.    | The Stay Reduces The Burdens Of Litigation On The District Court And The Parties                      | 38   |
| B.    | The Stay Will Simplify The Issues And Streamline A Trial                                              | 44   |
| C.    | Discovery Is Far From Complete                                                                        | 47   |
| D.    | A Stay Does Not Prejudice Segin Or Give Defendants A Tactical Advantage                               | 50   |

CONCLUSION .................................................................................................................54

DECLARATION OF AUTHORITY

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663
(5th Cir. 1994) ............................................................36

*Allen v. McCurry*, 449 U.S. 90 (1980) .............................................36

*Atlantic Marine Constr. Co.* v. *United States Dist. Ct.*, 134 S. Ct. 568
(2013)........................................................................46

*Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. App'x 297
(Fed. Cir. 2009)..............................................................34

*Benefit Funding Sys., LLC v. Advance Am. Cash
Advance Ctrs., Inc.*, 767 F.3d 1383 (Fed. Cir. 2014) ............................ *passim*

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989).............21

*Breithaupt v. Bank of Georgia*, 26 U.S. 238 (1828) ........................................ 26

*Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*,
No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165
(D. Colo. July 11, 2006) .................................................. 19, 20, 39

*buySAFE, Inc. v. Google, Inc.*, No. 3:13-cv-781-HEH,
2014 WL 2714137 (E.D. Va. June 16, 2014)........................... 21, 39, 50, 51

*Campbell v. Merit Sys. Protection Bd.*, 27 F.3d 1560 (Fed. Cir. 1994)............30

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012)..........23

*Cherokee Nation v. United States*, 124 F.3d 1413 (Fed. Cir. 1997) ................38

*Comes v. Microsoft Corp.*, 403 F. Supp. 2d 897 (S.D. Iowa 2005)..................28

*Darby v. Cisneros*, 509 U.S. 137 (1993)..............................................18

*E.I. Du Pont De Nemours & Co. v. MacDermid Printing Solutions
LLC*, No. 10-3409(MLC), 2012 WL 2995182 (D.N.J. July 23, 2012) ..........53

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ........................... 20, 22

*Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503
  (D. Del. 2012) ........................................................................53

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)......... 18, 28

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ......................21

*Garcia v. United States*, 469 U.S. 70 (1984) ...................................................18

*Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494 (1931)....................43

*GPS Indus. v. Pro Link Solutions*, No. 08 C 4028, 2009 U.S. Dist.
  LEXIS 131926 (N.D. Ill. Feb. 25, 2009)......................................................34

*Hardie v. United States*, 367 F.3d 1288 (Fed. Cir. 2004) ................................26

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744
  (2014) ...........................................................................................................19

*I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07-CV-1200 DMS (NLS),
  2008 WL 2078623 (S.D. Cal. Apr. 15, 2008) ..................................................9

*In re City of Houston*, 731 F.3d 1326 (Fed. Cir. 2013).....................................18

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936).......................................................25

*Landmark Tech v. ADT Corp.*, No. 6:13cv758 JDL, 2014 WL 2997371
  (E.D. Tex. July 3, 2014) ..............................................................................40

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289
  (Fed. Cir. 2013).............................................................................................22

*Lederer v. Newmatic Sound Sys.*, No. 10-CV-0271, 2011 U.S. Dist.
  LEXIS 757 (E.D.N.Y. Jan. 4, 2011)..............................................................34

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26
  (1998).............................................................................................................17

*Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*, No. 1:06-CV-2981,
  2011 U.S. Dist. LEXIS 27578 (N.D. Ohio Mar. 17, 2011)............................34

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962) ............................................ 25, 40

*Lopez v. Davis*, 531 U.S. 230 (2001) ...............................................................17

*Market-Alerts Pty., Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486
  (D. Del. 2013) ................................................................ 20, 39, 50

*Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26
  (1st Cir. 1998) .................................................................... 36

*MySpace, Inc. v. Graphon Corp.*, 672 F.3d 1250 (Fed. Cir. 2012) .................. 43

*Nalley v. Nalley*, 53 F.3d 649 (4th Cir. 1995) .................................... 17

*Pierce v. Underwood*, 487 U.S. 552 (1988) ........................................ 19

*Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496 (5th Cir. 2004) .......... 36

*Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*, Nos.
  1:10CV01370 *et al.*, 2013 WL 1662952
  (N.D. Ohio Apr. 17, 2013) ...................................................... *passim*

*Regents of the Univ. of Mich. v. St. Jude Med., Inc.*, No. 12-12908,
  2013 WL 2393340 (E.D. Mich. May 31, 2013) ................................ 14, 34, 41

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659
  WHA, 2011 WL 445509 (N.D. Cal. Feb. 3, 2011) ........................................ 34

*Round Roc Research LLC v. Dole Food Co.*, No. 11-1241, 2012 WL
  1185022 (D. Del. Apr. 6, 2012) ........................................................ 53

*Russo v. Sch. Bd. of Hampton*, 835 F. Supp. 2d 125 (E.D. Va. 2011) .............. 46

*Safeco Ins. Co. of Am., Inc. v. Burr*, 551 U.S. 47 (2007) .................................. 17

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420
  (Fed. Cir. 1997) .............................................................. 23, 25, 26

*Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995) ............................................ 46

*Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL
  2457284 (W.D. Pa. June 6, 2013) ................................................ 21, 39, 40, 49

*Singleton v. Wulff*, 428 U.S. 106 (1976) ............................................ 23

*Smartflash v. Apple, Inc.*, No. 6:13-cv-447, 2014 WL 3366661
  (E.D. Tex. July 8, 2014) ............................................................ 20

*Sony Elec., Inc. v. Guardian Media Tech. Ltd.*, 497 F.3d 1271
  (Fed. Cir. 2007)...........................................................................17

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d
  1349 (Fed. Cir. 2011) ..................................................................37

*Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, No. 2:12-cv-02278
  (WHW), 2012 WL 3061495 (D.N.J. July 25, 2012) .............................. 53, 54

*Transunion Intelligence, LLC v. Search Am., Inc.*, No. 11-CV-1075,
  2014 WL 753781 (D. Minn. Feb. 26, 2014)....................................48

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).......................................30

*Unwired Planet, LLC v. Google, Inc.*, No. 3:12-CV-00504-MMD-
  VPC, 2014 WL 301002 (D. Nev. Jan. 27, 2014) ................................... 48, 53

*Versata Software, Inc. v. Dorado Software, Inc.*, 2:13-CV-00920-
  MCE, 2014 WL 1330652 (E.D. Cal. Mar. 28, 2014)...................................40

*Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893, 2013 WL
  6912688 (W.D. Tex. June 20, 2013) ...............................................39

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307
  (Fed. Cir. 2014)........................................................................ *passim*

*Visual Interactive Phone Concepts, Inc. v. Samsung Telecom., Am.,
  LLC*, No. 11-12945, 2012 WL 1049197 (E.D. Mich. Mar. 28, 2012) ..........53

*Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007) ......................................30

*Voracek v. Nicholson*, 421 F.3d 1299 (Fed. Cir. 2005) ...................................29

*Weekley v. Guidant Corp.*, 392 F. Supp. 2d 1066 (E.D. Ark. 2005) ...............28

*Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545
  (Fed. Cir. 1986)...........................................................................43

*Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573
  (W.D. Wash. Oct. 7, 2013) ........................................... 20, 39, 49, 53

## STATUTES:

12 U.S.C. § 1828(c)(7)(A) ................................................................17

18 U.S.C. § 3742(e)(4) ....................................................................17

28 U.S.C. § 1338(a)..........................................................................2

28 U.S.C. § 1367 ....................................................................... *passim*

28 U.S.C. § 1441 ............................................................................28

28 U.S.C. § 1454 ............................................................................29

America Invents Act ("AIA"), Pub. L. 112-29, 125 Stat. 284 (2011)

    AIA § 18(b)(1).......................................................................... *passim*

    AIA § 18(b)(2) .......................................................... 2, 3, 16, 17, 26

    AIA § 19 ....................................................................................29

## LEGISLATIVE HISTORY:

157 Cong. Rec. S1053 (Mar. 1, 2011) ...............................................39

157 Cong. Rec. S1360-64 (Mar. 8, 2011) ...................................... 18, 19, 34, 39

## RULES:

Fed. R. Civ. P. 3 ............................................................................27

Fed. R. Civ. P. 11 ..........................................................................31

Fed. R. Civ. P. 54(b).......................................................................28

## STATEMENT OF RELATED CASES

Appellees state that no other appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court.  Counsel is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

IN THE

# United States Court of Appeals for the Federal Circuit

—————————

No. 2014-1786

—————————

SEGIN SYSTEMS, INC. and
SEGIN SOFTWARE, LLC (d/b/a RYNOHLIVE),

Plaintiffs-Appellants,

v.

STEWART TITLE GUARANTY COMPANY, PROPERTYINFO
CORPORATION, and FIRST BANKING SERVICES, INC.,

Defendants-Appellees.

—————————

Appeal from the United States District Court for the Eastern District of
Virginia in No. 2:13-cv-00190 RAJ-TEM, Judge Raymond Alvin Jackson

—————————

## BRIEF FOR APPELLEES

—————————

## INTRODUCTION

Appellants Segin Systems, Inc. and Segin Software, LLC (collectively,

"Segin") do not contest that the district court properly stayed litigation on their

patent infringement claims pending a Covered Business Method ("CBM") review

currently proceeding before the Patent and Trademark Appeal Board ("PTAB").

Instead, Segin challenges only the district court's decision, pursuant to Section

18(b) of the America Invents Act ("AIA"), Pub. L. 112-29, 125 Stat. 284 (2011),

that the litigation would be most appropriately managed and streamlined if the stay

1

covered all of the claims that Segin elected to bring together in the same case, including its non-patent claim.

That discretionary balancing of multiple factors should be reviewed under the traditional abuse-of-discretion standard. But regardless of what standard of review is applied, the district court did not err. Segin has waived its new argument that Section 18(b) does not apply to purportedly unrelated non-patent claims and that argument is meritless in any event. Moreover, contrary to Segin's arguments, all of its claims are intimately related to each other and the district court did not hold otherwise. And it was entirely appropriate for the district court to stay the non-patent claim, having determined (in a now-unchallenged order) that the patent claim should be stayed, rather than engender multiple discovery tracks and possibly sequential trials on claims involving overlapping issues and evidence. The challenged order should be affirmed.

## STATEMENT OF JURISDICTION

The district court has jurisdiction under 28 U.S.C. § 1338(a) and 28 U.S.C. §1367. Pursuant to AIA § 18(b)(2), this Court has jurisdiction over the district court's August 8, 2014 order granting a stay under AIA § 18(b)(1). *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1309 (Fed. Cir. 2014) ("'[a] party may take an immediate interlocutory appeal from a district court's

decision' granting or denying a motion to stay litigation pending CBM review")

(quoting AIA § 18(b)(2)).

## RELEVANT STATUTORY PROVISIONS

Section 18(b) of the AIA provides:

(1) IN GENERAL. If a party seeks a stay of a civil action alleging

infringement of a patent under Section 281 of title 35, United States Code, relating

to a transitional proceeding for that patent,[1] the court shall decide whether to

enter a stay based on—

> (A)    whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B)    whether discovery is complete and whether a trial date has been set;
>
> (C)    whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D)    whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

(2) REVIEW.  A party may take an immediate interlocutory appeal from a

district court's decision under paragraph (1).  The United States Court of Appeals

for the Federal Circuit shall review the district court's decision to ensure consistent

application of established precedent, and such review may be de novo.

---

1    A "transitional proceeding" is "a transitional post-grant review proceeding for review of the validity of covered business method patents."  AIA § 18(a)(1).

## STATEMENT OF THE ISSUES

1.     Whether the district court's August 8, 2014 order should be reviewed for abuse of discretion.

2.     Whether Segin waived its appellate argument that a stay issued under AIA § 18(b) cannot apply to allegedly unrelated non-patent claims by failing to raise that argument below.

3.     If that argument was not waived, whether AIA § 18(b) allows a stay of the non-patent claims.

4.     Whether the district court properly weighed the four factors of AIA § 18(b) in granting a stay of this case.

## STATEMENT OF THE CASE

Segin is the owner of U.S. Patent No. 8,165,939 (the "'939 Patent"), entitled "Method of Settling a Real Estate Transaction and System Implementing the Method."  A1-2, A100-120.  On April 12, 2013, Segin filed its complaint against Stewart Title Guaranty Company ("Stewart"), PropertyInfo Corporation ("PIC"),[2] and First Banking Services, Inc. ("FBS") (collectively, "Defendants" or "Appellees"), alleging infringement of the '939 Patent and, under the district court's supplemental jurisdiction under 28 U.S.C. §1367, a state law claim for

---

[2]  PIC is an indirect subsidiary of Stewart.  This brief refers collectively to these two defendants as "Stewart," unless otherwise specified.

breach of nondisclosure agreements ("NDAs") involving information related to the patented technology, seeking money damages and injunctive relief. A300-321. More than three months later, on July 25, 2013, Segin served the complaint on Defendants, A2, who answered and raised invalidity counterclaims. A209-10 (Dkt. 21, 36).

On December 20, 2013, pursuant to AIA § 18, Defendants filed with the PTAB a petition for CBM review of the '939 Patent. A3, A350-51. On December 26, 2013, Defendants moved to stay the entire action under AIA § 18(b). A1030-31. On March 31, 2014, the district court denied the motion without prejudice to its renewal if the PTAB instituted CBM review. A1-A14.

On July 8, 2014, the PTAB found that "it is more likely than not that [all claims of the '939 Patent] are unpatentable" and instituted CBM review. A606; *see* 37 C.F.R. § 42.208(c). Defendants renewed their motion for a stay. A1753-54. On July 23, 2014, the district court granted a stay of litigation regarding the patent claim but deferred its decision as to the breach of contract claim. A15-21. Segin did not appeal that stay order. On August 8, 2014, after further briefing, the district court granted a stay of the entire civil action, including the breach of contract claim. A22-29. Eighteen days later, Segin noticed an interlocutory appeal from the August 8 order. A218 (Dkt. 150).

## STATEMENT OF THE FACTS

**A.    Segin's Overlapping Allegations Of Patent Infringement And Misappropriated Intellectual Property.**

The '939 Patent describes a method and system for processing the financial details of a real estate settlement or similar transactions.  A114.  For purposes of disclosure, the '939 Patent relies upon the web-based financial management software designed and marketed by Segin as Rynoh*Live* as the preferred embodiment.  A115.  Rynoh*Live* automates various transactions required to complete a real estate settlement and allegedly provides real-time (or near real-time) performance of several of these transactions, with the purpose of simplifying the settlement process and attempting to reduce fraudulent transactions.  A304 ¶ 13.

In 2005, when a predecessor of Rynoh*Live* was in its early development stages, one of its founders communicated with predecessors of PIC about the project.  Segin and PIC's predecessors then entered into the NDAs, which restricted disclosure of confidential information about the project.  A2.[3]  However, the definition of "confidential information" under the NDAs excludes information

_____

[3]   The NDAs are governed by Virginia law, and provide that "[t]he Virginia state courts of the City of Norfolk (or, if there is exclusive federal jurisdiction, the United States District Court for the Eastern District of Virginia, Norfolk Division) shall have exclusive jurisdiction and venue over any dispute arising out of or relating to this Agreement, and the Recipient hereby consents to the jurisdiction and venue of such courts."  A331 ¶ 16.

that "[i]s or becomes publicly available through authorized disclosure." A324 at ¶ 4(c). In Stewart's view, this includes information Segin later made publicly available when it sought its patent.

In late 2009, Stewart began internally using OnTrac, a real estate settlement reconciliation service developed by FBS, as part of a suite of products called AgencySecure. Segin alleges that AgencySecure is a "clone" of Rynoh*Live* and infringes the '939 Patent. A2, A10; A309 ¶ 37; A312 ¶ 55. Stewart denies that it provided to FBS any confidential Segin information in order to enable FBS to develop OnTrac. *Compare* A309 ¶ 38 *with* A1005 ¶ 38. Stewart also denies that AgencySecure is identical to Rynoh*Live*. *Compare* A310 ¶ 43 *with* A1005 ¶ 43.

Stewart also denies that Segin and Stewart are "bitter competitors competing for market share with highly similar products." Opening Br. 8. As Segin concedes, AgencySecure was not marketed from 2009-2012 and was "used only by Stewart entities" during that time. A309 ¶ 39. Defendants also dispute Segin's assertion that FBS, which does not own AgencySecure, "intends to expand AgencySecure beyond Stewart and launch it across the market," A310 ¶ 40, and similar allegations that AgencySecure has been, or is intended to be, marketed outside of Stewart entities. *Compare*, *e.g.*, A313 ¶ 62 and A316-17 ¶ 84 *with* A1006 ¶ 62, 1009 ¶ 84, 1022 ¶ 62, 1024 ¶ 84.

Segin alleges that "this is a patent infringement and breach of contract action 'arising out of' and 'relating to'" the NDAs.  A303 ¶ 8.  Acknowledging that its allegations of willful patent infringement are interrelated with its allegations that confidential information was disclosed in breach of the NDA, Segin filed both claims together in a single complaint and seeks a jury trial on both.  A300.

The same conduct—Defendants' development and use of AgencySecure— underlies both the patent and non-patent claims.    Segin alleges the NDAs were entered into "[t]o protect Segin Systems's intellectual property."  A306 ¶ 23.  Segin alleges that the use of AgencySecure is both an act of willful patent infringement and a breach of the NDAs, and that conduct is the basis for Segin's allegations of harm on both claims.  *Compare*, *e.g.*, A314 ¶ 65 (alleging that AgencySecure infringes the '939 Patent) *with* A316-17 ¶ 84 (alleging that use of confidential information to develop AgencySecure breached the NDAs).  To support both claims, Segin alleges that Stewart provided information about Rynoh*Live* to FBS "to enable and facilitate the cloning of Rynoh*Live* and the launch of a directly competing software, in violation of the NDAs and Segin's intellectual property rights."  A305 ¶ 18.

The factual allegations Segin alleges it could prove at trial would thus be marshaled in support of both the breach of contract claim and the patent infringement claim.  Segin alleges that "Stewart and its predecessors breached, and

Stewart continues to breach, the NDAs by using the Confidential Information for their own benefit, in competition with Segin" and that Stewart "used the Confidential Information to launch competing products and/or services including … AgencySecure." A316-17 ¶¶ 78, 84. The same basic facts regarding Defendants' development and use of AgencySecure are claimed to support the contention that Defendants infringed and contributed to the infringement of the '939 patent by "making, using, offering to sell and/or selling" AgencySecure. A314-15 ¶¶ 63, 65, 67, 73, 75.

### B.    The District Court's Stay Of The Civil Action.

Defendants filed their petition for CBM review on December 20, 2013 and on December 26, 2013 moved to stay the entire action pursuant to AIA § 18(b). A3, A350-51.  In response, Segin cited authority explaining that a stay of the patent claim alone, without a stay of the breach of contract claim, would cause the parties and the court to "'duplicate their efforts, which is wasteful, expensive and timeconsuming,'" and therefore it would be "'more efficient for everyone to litigate the patent-related claims concurrently rather than consecutively.'" A488 (quoting *I-Flow Corp. v. Apex Med. Techs., Inc*., No. 07-CV-1200 DMS (NLS), 2008 WL 2078623, at *2 (S.D. Cal. Apr. 15, 2008)).  In arguing against a stay of its patent claim, Segin also asserted that the non-patent claim was "likely to

involve at least some overlapping discovery," and therefore judicial economy favored proceeding with all claims at once.  A499-500.

On March 31, 2014, the district court denied the stay without prejudice, noting that it was "difficult to predict the impact of a stay because it is completely unknown whether or not [PTAB] review will occur."  A6.  "Given the uncertainty surrounding whether or not the PTAB will review the disputed patent," the court found that the motion to stay was "premature" and should be denied without prejudice to its renewal if the PTAB accepted review.  A13-14.

Discovery continued and engendered numerous disputes.  *See* A211 (Dkt. 58-59 *et seq*. (Segin's motion to compel); A214 (Dkt. 86) (noting conference call regarding discovery disputes).  Segin and PIC each filed motions to compel discovery and for sanctions, each contending that the other had not produced requested documents and information.  A214 (Dkt. 87, 93).  As the district court noted, "discovery has already been contentious."  A28.

On July 8, 2014, the PTAB found that "it is more likely than not that [all claims of the '939 patent] are unpatentable" and instituted a CBM review.  A606; A15 ("PTAB … indicated that it will review all claims of the patent").  Two days later, Defendants renewed their motion for a stay.  A575.

On July 23, 2014, the district court stayed litigation on Segin's claims of patent infringement, and requested further briefing on whether litigation on the

breach of contract claim should be stayed.  A20-21.  Segin did not appeal the July 23 order and does not now contest that the district court validly stayed all litigation related to the patent claim and counterclaims.  Opening Br. 4.

On August 8, 2014, the district court entered an additional order staying litigation on the breach of contract claim.  A22-29.  Balancing the four statutory factors, the court concluded that "the first and second factors are neutral, the third factor weighs against a stay, and the fourth factor weighs strongly in favor of a stay."  A28.

The first factor looks to whether a stay or denial would "simplify the issues in question and streamline the trial."  AIA § 18(b)(1)(A).  In concluding that this factor was "neutral," the district court—contrary to Segin's repeated assertions—did not find that the breach of contract claim was "unrelated" to the patent claim. *Cf.* Opening Br. 1, 10, 13, 17, 21, 22, 27.  Rather, the court recognized that, even though the claims may involve overlapping allegations and evidence, the breach of contract claim does not depend on the validity of the patent.  A26-27.  It had not been shown that "a ruling from the PTAB *as to the validity of the patent* will have any effect whatsoever on the breach of contract claim."  *Id*. (emphasis added).  Thus, the court noted that "[i]t may indeed be relevant what information [provided under the NDAs] was disclosed, but that is a factual matter independent from the validity of the patent."  A27.  The court concluded that Defendants had not shown

11

the PTAB validity proceeding would impact the breach of contract claim "outside of potentially duplicative discovery," which the court addressed under the fourth factor. *Id*. Thus, the breach of contract claim "will remain and will not be simplified no matter what the outcome of PTAB review." *Id*.

Although the PTAB's determination of the patent's validity would not affect the breach of contract claim, the court nonetheless found that staying the case would streamline the trial and simplify the issues in two ways. First, if the court did not stay litigation on the breach of contract claim and the PTAB does not find all of the patent claims invalid, "then the Court will be required to hold two trials." *Id*. Second, staying only the patent claim "will increase, rather than simplify, the issues in dispute, because the Court will be required to adjudicate which contested discovery matters pertain to which claim and to which parties (as the breach of contract claim was not brought against FBS)." *Id*.

The second factor looks to "whether discovery is complete and whether a trial date has been set." AIA § 18(b)(1)(B). Even though "discovery has progressed since the Court's first order and the parties have now completed their *Markman* briefings," the court found that this factor "remains neutral given the remaining matters to be conducted and that the parties are still two and a half months from the scheduled trial." *Id*.

The third factor looks to whether a stay or denial "would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." AIA § 18(b)(1)(C).  Incorporating analysis from its earlier orders, the court concluded that the third factor "weighs against a stay, but no longer strongly against a stay."  A27.  The court repeated its earlier conclusion that Segin would likely suffer prejudice, which was based on the court's belief that Defendants are competitors with Segin.  *Id*.  But the PTAB's intervening conclusion that all claims of the patent are more likely than not invalid abated the court's concern that the Defendants "would potentially have two separate forums in which to challenge the validity of the patent."  A28.  The court found that this was "not a relevant consideration with respect to the breach of contract claim."  *Id*.

Finally, the district court concluded that the fourth factor "weighs strongly in favor of a stay" of the entire action.  *Id*.  The district court reasoned that "allowing the case to progress in a piecemeal fashion will increase the burden of litigation in this case."  *Id*.  Moreover,

> [e]ven if the PTAB finds that all claims of the patent are invalid, obviating the need for a second trial and for any further proceedings as to the patent infringement claim, the Court will still have to expend resources adjudicating the discovery disputes between the parties. This is because discovery has already been contentious and if the contract claim were to go forward, the Court would in addition be required to adjudicate which discovery matters pertain to the breach of contract claim and which do not.

A28 (citing *Regents of the Univ. of Mich. v. St. Jude Med., Inc*., No. 12-12908, 2013 WL 2393340, at *3 (E.D. Mich. May 31, 2013)).  And "the parties may have to duplicate some remaining discovery matters, such as deposing witnesses twice who have information as to both claims."  A28.

On August 26, 2014, Segin filed its notice of appeal challenging only the district court's August 8 decision to stay the breach of contract claim.  A218 (Dkt. 150).

## SUMMARY OF THE ARGUMENT

The district court's stay order should be reviewed only for abuse of discretion.  As the Court recently confirmed in *Benefit Funding Sys., LLC v. Advance Am. Cash Advance Ctrs., Inc*., 767 F.3d 1383 (Fed. Cir. 2014), review of an order granting or denying a stay under Section 18(b) is ordinarily subject to the traditional abuse-of-discretion standard unless there is a compelling reason for more searching review given the facts of a particular case.  There is no such compelling reason here for applying de novo review to the fact-specific question whether the district court properly balanced the four factors in this case.

By failing to raise it below, Segin has waived its new argument that the AIA does not authorize the district court to stay Segin's purportedly "unrelated" state law breach of contract claim.  In any event, the express language of the AIA authorizes parties to seek to stay a "civil action," which is broader than the specific

14

claims that comprise the action. Contrary to Segin's contention, the statute does not require district courts to parse whether claims in a case are "related," and if not, apply two different standards to a stay request. But regardless, as Segin itself alleged in bringing its claims together, its breach-of-contract and patent claims are intimately related, as they arise from a common nucleus of operative fact.

Whatever the appropriate standard of review, there is no reason to disturb the district court's decision to stay this case. The order can be affirmed on the strength of the "burden of litigation" factor alone, because the district court properly found that allowing Segin's state law claim to proceed while the patent claim is stayed could lead to wasteful, duplicative proceedings, including unnecessary discovery disputes and multiple trials on overlapping claims. But the other factors also weigh in favor of stay, because staying this action will streamline the issues for trial, discovery is far from "complete," and Segin's own conduct— particularly its failure to move for any injunctive relief—belies its contention that it will suffer undue prejudice that cannot be remedied by monetary relief.

## ARGUMENT

## I. THE DECISION TO STAY THE BREACH OF CONTRACT CLAIM SHOULD BE REVIEWED FOR ABUSE OF DISCRETION.

When a party takes an interlocutory appeal from an order granting or denying a stay under AIA § 18(b), the Court "shall review the district court's decision to ensure consistent application of established precedent, and such review

15

*may* be de novo." AIA § 18(b)(2) (emphasis added). Segin nevertheless asserts that the Court "*must*" review the stay order de novo, Opening Br. 14 (emphasis added), because, it argues, "[t]here must be a consistent standard of review that applies in all cases," and the Court is not allowed on a case-by-case basis to decide "which standard it will apply." *Id.* Segin therefore maintains that "[p]er the plain statutory language, review is de novo." *Id.* at 15.

This Court has subsequently confirmed that Segin is wrong. In *Benefit Funding*, *supra*, the Court confirmed that review of an order granting or denying a stay under Section 18(b) is subject to an abuse-of-discretion standard unless there is a compelling reason why a more searching standard of review is required in a particular case. There, the Court applied the abuse-of-discretion standard to affirm an order granting a Section 18(b) stay, rejecting the appellant's argument that a stay was unwarranted because the PTAB allegedly exceeded its authority in instituting the CBM review.

The Court noted that although stays pending PTO proceedings are traditionally reviewed only for abuse of discretion, Section 18(b) provides the Court with the "authority" to conduct a more searching review. 767 F.3d at 1385. But the Court elected not to exercise that authority given the particular circumstances of that case. Instead, it held that "the district court did not abuse its discretion in granting the stay" and that "consistency with established precedent

16

was not at issue in this case and no other compelling reason for a more searching

review was presented." *Id.* at 1387. Thus, under *Benefit Funding*, Section 18(b)

review will be for abuse of discretion, unless the appellant presents a "compelling

reason for a more searching review" based on the circumstances of a particular

case.

That is what the statute provides. Had Congress intended a single standard

of review applicable "in all cases," Opening Br. 14, it knew exactly how to say

"review ***shall*** be de novo." *See*, *e.g.*, 18 U.S.C. § 3742(e)(4); 12 U.S.C.

§ 1828(c)(7)(A). Instead, Congress provided only that review "may" be de novo.

AIA § 18(b)(2). As was held in *Benefit Funding*, this provides the Court with the

authority to employ de novo review when necessary, but does not require it. 767

F.3d at 1385. *See*, *e.g.*, *Lopez v. Davis*, 531 U.S. 230, 240-41 (2001) (contrasting

the "permissive 'may'" with the "mandatory 'shall'" and concluding that the

agency had "the authority, but not the duty" to perform the permissive statutory

acts).[4] Congress expects that courts will give effect to such an important word

_____

[4]    *Compare, e.g.*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting "the mandatory 'shall' which normally creates an obligation impervious to judicial discretion") *with Sony Elec., Inc. v. Guardian Media Tech. Ltd.*, 497 F.3d 1271, 1287 (Fed. Cir. 2007) ("The Declaratory Judgment Act states that courts 'may' grant relief; it does not require courts to grant relief."); *Nalley v. Nalley*, 53 F.3d 649, 651-52 (4th Cir. 1995) (rejecting the argument that Congress's use of "the term 'may' in a statute can be given a mandatory construction by this court").

choice.  *See Safeco Ins. Co. of Am., Inc. v. Burr*, 551 U.S. 47, 58 (2007) (relying on the "interpretive assumption that Congress knows how we construe statutes and expects us to run true to form").  That is just what the Court did in *Benefit Funding*.

Given the plain language of Section 18(b) and the Court's holding in *Benefit Funding*, there is no need for the Court to resort to legislative history to interpret the statute.  *See, e.g.*, *Darby v. Cisneros*, 509 U.S. 137, 147 (1993) ("Recourse to the legislative history … is unnecessary in light of the plain meaning of the statutory text.").  But the legislative history on which Segin relies—a floor statement by a single member of Congress—is of little to no use in discerning Congress' overall intent.[5]  Indeed, while Senator Schumer said that this Court "should" review a Section 18(b) order de novo, 157 Cong. Rec. S1364 (not the "must" that Segin now claims), the statute Congress actually enacted provides only that the Court "may" do so.

---

[5]  *See, e.g.*, *Garcia v. United States*, 469 U.S. 70, 76 (1984) (noting that committee reports are most authoritative source of legislative history and stating that "[w]e have eschewed reliance on the passing comments of one Member and casual statements from the floor debates."); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005) (noting risk that legislators could use legislative history "to secure results they were unable to achieve through the statutory text"); *In re City of Houston*, 731 F.3d 1326, 1333 (Fed. Cir. 2013) (declining to rely on "individual statements on the floor of the legislature by key legislators in favor of or opposed to the legislation").

As in *Benefit Funding*, the traditional abuse-of-discretion standard should apply here because Segin has presented no "compelling reason for a more searching review." 767 F.3d at 1387. Aside from its argument that a Section 18(b) stay cannot ever apply to an allegedly unrelated non-patent claim—which has been waived, *see infra* at 23-26—Segin argues only that the district court "erred in its weighing of the Section 18(b) factors," given the facts of this case. Opening Br. 25 (initial capitalization removed). Such discretionary weighing and balancing of multiple factors by a district court in light of the facts of a particular case is precisely the circumstance where abuse-of-discretion review is warranted. *See*, *e.g.*, *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748-49 (2014) ("exceptional case" determination reviewed only for abuse-of-discretion given that "the question is 'multifarious and novel,' not susceptible to 'useful generalization' of the sort that de novo review provides, and 'likely to profit from the experience that an abuse-of-discretion rule will permit to develop'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 562 (1988)).

Indeed, to the extent legislative history of Section 18(b) is relevant at all, it supports abuse-of-discretion review as to whether the district court weighed the factors appropriately. According to a floor leader for the bill, Congress borrowed the Section 18(b) test from a district court decision. *See* 157 Cong. Rec. S1364 (Mar. 8, 2011) (Statement of Sen. Schumer) (citing *Broadcast Innovation, L.L.C. v.*

19

*Charter Commc'ns, Inc*., No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165 (D.

Colo. July 11, 2006)).  The *Broadcast Innovation* decision, in turn, emphasized the

discretionary nature of its test arising from a court's inherent powers.  2006 WL

1897165, at *4 ("A motion to stay an action pending the resolution of a

reexamination proceeding in the United States Patent and Trademark Office is

directed to the ***sound discretion of the court***.") (emphasis added) (citing, *inter alia*,

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).

In fact, Congress provided district courts even broader discretionary

authority than they previously possessed when considering stays pending PTO

examination.  *See Market-Alerts Pty., Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d

486, 490 n.6 (D. Del. 2013) (fourth factor represents the "sole statutory

modification to the analysis").  By allowing a district court to make its own

assessment regarding the "burden of litigation" on itself and the parties, Congress

made it easier for a court to exercise its discretion to stay a case.[6]   Yet stays under

the AIA should "remain[] squarely within the court's discretion," *Smartflash v.*

_____

[6]   *See Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573, *3
(W.D. Wash. Oct. 7, 2013) ("the four-factor test was designed to increase the
likelihood that the court will grant a stay when a party initiates a transitional CBM
review, as opposed to an ordinary PTO reexamination"); *Progressive Cas. Ins. Co.
v. Safeco Ins. Co. of Illinois*, Nos. 1:10CV01370 *et al*., 2013 WL 1662952, at *3
(N.D. Ohio Apr. 17, 2013) ("the test established by the AIA is designed to increase
the likelihood that a stay will be granted when transitional CBM review, in
comparison with an ordinary PTO reexamination, has been instituted").

*Apple, Inc.*, No. 6:13-cv-447, 2014 WL 3366661, *2 (E.D. Tex. July 8, 2014),

given that "such determinations must rest on the facts of each particular case."

*Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284, at *1

(W.D. Pa. June 6, 2013)). "Congress could have created an automatic stay of

litigation pending CBM Review, but did not." *buySAFE, Inc. v. Google, Inc*., No.

3:13-cv-781-HEH, 2014 WL 2714137, *2 (E.D. Va. June 16, 2014).

In *Benefit Funding*, this Court applied the traditional abuse-of-discretion

standard even though the issue there—whether a stay should have been denied

given arguments that the PTAB lacked power to institute a review—implicated

core patent law principles. Here, there is even less need for more searching

review, much less a compelling reason. Ordinarily, "the reviewing attitude that a

court of appeals takes toward a district court decision should depend upon 'the

respective institutional advantages of trial and appellate courts.'" *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995)) (citation omitted). Congress

conferred exclusive patent law jurisdiction on this court "to 'provide nationwide

uniformity in patent law.'" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489

U.S. 141, 162 (1989) (citation omitted). In Section 18(b), by contrast, Congress

entrusted to the district courts the discretionary task of balancing statutory factors

as applied to the facts of particular cases.

The abuse of discretion standard is particularly appropriate in the unique circumstances of this case. Segin does not contest that the district court correctly stayed litigation on the patent infringement claim and contends only that the court should have continued to adjudicate a ***non***-patent claim brought under Virginia law. Whatever the appropriate circumstances for de novo review under Section 18(b)—which the Court need not determine here—they do not include arguments that a trial court should have weighed certain factors differently so that a plaintiff could continue to litigate a pendent state law claim that the court would have had inherent power to stay even without the statute, potentially requiring two separate trials and discovery periods. *Cf. Ethicon*, 849 F.2d at 1426-27. The district court's one-off balancing of factors in light of the idiosyncratic facts of this case raises no concern regarding consistency with established precedent and there is no other compelling reason for a more searching review. *Benefit Funding*, 767 F.3d at 1387.

Accordingly, as in *Benefit Funding*, the Court should review the August 8 order for abuse of discretion, which exists only "when the trial court's decision is clearly unreasonable, arbitrary or fanciful, or is based on clearly erroneous findings of fact or erroneous conclusions of law." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc*., 714 F.3d 1289, 1293 (Fed. Cir. 2013). As shown below, the district court did not abuse its discretion in staying this case.

## II.   THE STAY PROPERLY EXTENDED TO THE NON-PATENT CLAIM.

### A.   Segin Waived The Argument That A Section 18(b) Stay Cannot Include Allegedly Unrelated Non-Patent Claims.

Segin argues for the first time on appeal that AIA § 18(b) could not, under any circumstances, authorize a stay covering its breach of contract claim. Opening Br. 16-25. Segin waived this argument by failing to raise it in the district court. "If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997); *see also Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("[Appellant] chose not to properly raise this before the district court. The general rule is that this court does not consider arguments not raised below.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Nowhere below did Segin raise its new-found argument that the district court lacked statutory authority to stay its breach of contract claim under the Section 18(b). The argument is therefore waived.

In response to Defendants' initial and renewed motions for a stay, Segin did not argue that the district court was powerless to stay the breach of contract claim. *See* A486-87 (arguing that AIA stay is "not without its limits" but failing to argue that the stay of breach of contract claim is beyond those limits); A726 (arguing to district court that it "must" consider four factors in deciding whether to stay

litigation under the AIA, but failing to argue that stay of breach of contract claim is beyond the scope of the AIA). Instead, Segin argued in the first instance (and not in the alternative) that the statute's four factors weighed in its favor. *See* A485-500; A726-28. Segin's alternative argument was that, if the district court did not deny the motion for stay in its entirety, it should deny a stay of the breach of contract claim on various equitable grounds, including "irreparable harm." *See* A741-43. But Segin never argued that the district court lacked authority under the AIA, as a matter of law, to stay its breach of contract claim. Nor did it ever argue, as it now attempts to do for the first time on appeal, that a "traditional approach" to staying a claim must control, rather than the AIA. *See* Opening Br. 22-24.

The district court's orders denying, deferring and eventually granting the stay all indicated that the court understood that it was being asked to stay all claims. Yet Segin never sought reconsideration of any order on the grounds that a stay of the breach of contract claim exceeded the scope of the AIA. The district court directed Defendants to file reply briefing on the issue of whether to stay the breach of contract claim, A20, and when Segin attempted to respond by means of a motion for leave to file a sur-reply and proposed sur-reply (which was never granted or filed), it still failed to argue that such a stay would exceed the court's authority under the AIA. Dkt. 142, 143.

Having never given the district court an opportunity to pass on this argument, Segin waived it, and the Court does not consider such issues in the first instance on appeal. *Sage Prods.*, 126 F.3d at 1426 ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal" because "this court does not 'review that which was not presented to the district court.'"). Moreover, considering the issue now would prejudice Defendants and entail an unnecessary waste of judicial resources. Had Segin raised the argument below, the district court could have (and very likely would have) made an alternative finding staying the non-patent claim under its inherent authority. *See* A28 (granting stay in light of court's "inherent interest 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). That decision would not have been appealable under Section 18(b) and Segin's present appeal would be moot. Accordingly, if Segin truly believed the district court lacked authority under AIA § 18(b), it should have made that argument to the district court rather than withholding the argument until appeal.

Nor is this issue a jurisdictional argument that could be considered for the first time on appeal. *Cf. Sage Prods.*, 126 F.3d at 1426. Segin, which filed the appeal, admits that this Court has jurisdiction under AIA § 18(b)(2) because the district court stayed the breach of contract claim "pursuant to Section 18(b) of the AIA." Opening Br. 2. And there is no argument that the district court lacked jurisdiction. Although Segin argues that the decision below was erroneous, that does not deprive this Court of jurisdiction because the stay was issued under Section 18(b). Indeed, if the Court lacked jurisdiction over this appeal, then the Court would have no authority to grant Segin the relief it seeks. *Breithaupt v. Bank of Georgia*, 26 U.S. 238, 240 (1828) ("the Circuit Court has no jurisdiction of the cause, and can grant no relief"); *Hardie v. United States*, 367 F.3d 1288, 1289 (Fed. Cir. 2004) ("Because we lack jurisdiction to hear this appeal, we dismiss.").

## B.   The District Court Properly Exercised Its Authority Under AIA § 18(b) By Staying The Entire Civil Action.

Segin's argument regarding the scope of AIA § 18(b), even if considered, is meritless. Segin argues that a Section 18(b) stay cannot cover state law claims that are allegedly "unrelated" to a patent claim, such that district courts faced with a request to stay an action involving both kinds of claims would have to examine whether the claims are related and, if they are not, apply two potentially different standards—Section 18(b) and the court's traditional inherent authority—in order to resolve such requests. Opening Br. 16-25. That argument is wrong for at least two

reasons.  First, nothing in the statute provides that the stay cannot extend to all claims in the case; quite to the contrary, the statute expressly authorizes the district court to grant a request to stay the entire "civil action."  Second, the non-patent claim in this case is unquestionably related to the patent claim, which is why Segin filed them together in the first place.

### 1.     A Section 18(b) Stay May Extend To All Claims.

Nothing in the statute prohibits a district court from issuing a stay of non-patent claims based on whether or not they are related to a patent claim.  According to Segin, "the statute itself is directed to ***patent claims*** 'relating to a transitional proceeding for that patent.'"  Opening Br. 19 (citing and quoting portion of AIA § 18(b)(1)) (emphasis added).  But Segin misrepresents the actual statutory language.  This is how it actually reads:

> If a party seeks a stay ***of a civil action*** alleging infringement of a patent under Section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on [the four statutory factors]

AIA § 18(b)(1) (emphasis added).  The statute says nothing about "claims."  Rather, it allows a party to seek "a stay of a civil action."  That is what happened here:  Defendants sought a stay of Segin's civil action, comprising both the patent and non-patent claims, and the court granted the request.

Segin's "civil action" comprises all its claims, including the non-patent claim.  A civil action is broader than a claim.  *See*, *e.g.*, Fed. R. Civ. P. 3 ("civil

action" commenced by filing complaint); Fed. R. Civ. P. 54(b) (noting that an "action" may "present[] more than one claim for relief"). Thus, in *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, the Supreme Court construed the supplemental jurisdiction statute invoked by Segin in this case, which provides that in "any ***civil action*** of which the district courts have original jurisdiction" the district courts have supplemental jurisdiction over certain "claims." 28 U.S.C. § 1367(a) (emphasis added). In accord with the statute, the Court distinguished between the two terms, holding that the "civil action" is the entire case and can include claims over which the district court would not have independent jurisdiction. *ExxonMobil*, 545 U.S. at 559.

Congress knows the difference between a "civil action" and "claims" or "causes of action" contained in that action. For example, federal removal statutes, 28 U.S.C. § 1441 *et seq*., "distinguish between 'a claim or cause of action,' and 'a civil action.' A claim or cause of action is asserted in and is a part of a civil action, but the term civil action is more encompassing—it includes motions, discovery, and all other components of the proceeding." *Weekley v. Guidant Corp*., 392 F. Supp. 2d 1066, 1067 (E.D. Ark. 2005). *See also Comes v. Microsoft Corp*., 403 F. Supp. 2d 897, 903 (S.D. Iowa 2005) ("A 'civil action' is distinguishable from a 'claim' or a 'cause of action' because it is the case in its entirety….").

Congress employed this same distinction in the AIA's own removal provision.  In AIA § 19, which immediately follows the stay provision, Congress amended 28 U.S.C. § 1454 to provide that "[t]he court to which a ***civil action*** is removed is not precluded from hearing and determining any ***claim in the civil action*** because the [state court] did not have jurisdiction over that claim;" and that "[i]f a ***civil action*** is removed," the district court "shall remand ***all claims*** that are neither a basis for removal … nor within the original or supplemental jurisdiction of the district court…."  AIA § 19(c) (emphasis added).  Thus, the civil action is broader than the claims:  the entire action can be removed and the non-patent claims can then be remanded in certain circumstances.  Because Congress is presumed to use the same terms the same way in the same Act, *see*, *e.g*., *Voracek v. Nicholson*, 421 F.3d 1299, 1303 (Fed. Cir. 2005), the term "civil action" should have the same meaning in the stay provision of Section 18 as it has in Section 19.

Defendants therefore acted fully in accord with Section 18(b) by seeking a stay of the entire civil action, including both the patent and non-patent claims, and the district court was clearly authorized to grant that request.[7]

---

[7]   Because the district court stayed the entire action, the Court has no occasion here to consider a district court's authority under Section 18(b) to enter a partial stay.  It should be noted, however, that while the statute authorizes parties to seek a stay of an entire civil action it does not expressly limit the court's authority to grant less than that relief.  Moreover, a partial stay would comport with the general

### 2.     Segin's Non-Patent Claim Is Related To Its Patent Claim.

Segin argues, for the first time on appeal, that Section 18(b) does not authorize stays of non-patent claims that are "unrelated" to a patent infringement claim subject to CBM review.  *See*, *e.g.*, Opening Br. 17.  As set forth above, that argument was waived and the statute contains no such limitation.  But regardless, Segin's new-found argument founders on its own terms, because Segin's breach of contract claim is not "unrelated" to its patent claim, and the district court made no such finding.

Segin itself made clear that all its claims are related.  Segin expressly pled supplemental federal jurisdiction for its state law claim under 28 U.S.C. § 1367.  A302.  Where, as here, the complaint includes a federal claim, that statute allows "supplemental jurisdiction over all other claims that are ***so related*** to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a) (emphasis added).  Section 1367(a) codifies the pendent jurisdiction doctrine that required claims to have a "common nucleus of operative fact" such that a plaintiff would "ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Voda v.*

---

principle that "[t]he greater power subsumes the lesser."  *Campbell v. Merit Systems Protection Bd.*, 27 F.3d 1560, 1567 (Fed. Cir. 1994).

*Cordis Corp*., 476 F.3d 887, 894 (Fed. Cir. 2007). Accordingly, Segin itself has asserted, consistent with its obligations under Fed. R. Civ. P. 11, that its non-patent and patent claims are related and arise from a common nucleus of operative fact. Moreover, in its jurisdictional allegations, Segin pled that the entire action, necessarily including both the patent infringement and breach of contract claims, is "'arising out of' and 'relating to'" the NDAs. A303 ¶ 8.

In fact, the claims are intimately related. Both the patent and non-patent claims are based on the same conduct by Defendants: their development and use of AgencySecure. *See supra* at 8-9. In the breach of contract claim, Segin alleges that AgencySecure is improperly based on confidential information regarding Rynoh*Live* that was disclosed through the NDAs. In the patent claim, Segin alleges that AgencySecure infringes the '939 Patent, of which Rynoh*Live* is the preferred embodiment. The purported harm from each claim (if any) will thus stem from the same conduct—the use of AgencySecure. Moreover, the NDAs provide that "confidential information" does not include, among other things, information which "[i]s or becomes publicly available through authorized disclosure." A324. Information that was publicly disclosed, including information Segin disclosed when the '939 Patent issued, cannot thereafter be protected as "confidential information" under the NDAs. Thus, the patent and its prosecution

31

history are relevant to whether Segin has "confidential information" left to protect (and if so, for what period of time).

Segin repeatedly mischaracterizes the district court's orders as having "expressly" concluded that its breach of contract claim is "unrelated" to its patent claim. *See* Opening Br. 1, 2, 13, 17, 21, 22. The court made no such finding. In discussing Defendants' argument that there would be overlap between the claims, the court stated only that "this does not establish that a ruling from the PTAB as to the validity of the patent will have any effect whatsoever on the breach of contract claim." A27. That may be true, as the breach of contract claim does not necessarily turn on the validity of the patent. But this observation in no way establishes that the claims are ***unrelated***. In fact, nowhere in either of the district court's two orders on Defendants' renewed motion to stay did it ever use the terms "related" or "unrelated." *See* A15-21, A22-29. To the contrary, the court noted the difficulty in distinguishing between the evidence supporting the claims. A28. The claims are in fact intimately related, even if a decision on the validity of the patent would not control the outcome of the breach of contract claim.

### 3.    Segin's Policy Arguments Are Immaterial And Mistaken.

Because the statute is unambiguous and Segin's argument fails under its own terms, there is no occasion for the Court to consider Segin's various policy

arguments as to why Section 18(b) should not cover the breach of contract claim. But the policy underlying the statute supports the same result.

In Segin's view, when a defendant seeks a stay of both patent and non-patent claims after petitioning for CBM review of a patent, the district court must undertake a threshold determination of whether the claims are "related," and if it determines they are not, it must apply *two* different sets of standards—the AIA for the patent claim, and pre-AIA standards for the non-patent claim—in order to decide what will be stayed. Opening Br. 17-19. In that event, the decision whether to stay the patent claims would be appealable to this Court under Section 18(b) while the decision whether to stay the non-patent claims would not. Nothing in the AIA suggests that Congress intended such a complicated procedure. To the contrary, the statute was intended to simplify rather than to complicate proceedings related to the CBM process.

Segin cites to decisions not involving AIA § 18 in which courts declined stays in cases involving both non-patent and patent claims. Opening Br. 22-25 & n.2. All involved, as here, the trial court's exercise of its discretion. There are numerous other cases in which courts exercised their discretion to decline to authorize separate, sequential discovery proceedings and trials on non-patent

claims brought together with patent claims.[8]  But none of these cases controls the analysis under the superseding statute.  As Segin concedes, AIA § 18 "substantially altered the governing standards for a stay," by making the standard more liberal in favor of stays, particularly through the addition of the fourth factor.  Opening Br. 19, 22-23; *see also infra* at 38-40.  And as shown above, Congress did not set the AIA framework aside with respect to non-patent claims.  Nothing in the statute supports, much less compels, Segin's convoluted procedure under which a district court would have to apply two different standards to a stay request in a single case, with this Court having jurisdiction to review the decision on only part of that request.

Segin's other policy arguments do nothing to advance its argument.  *Cf.* Opening Br. 20.  Segin quotes Senator Schumer's view that the CBM process was intended to provide an alternative to litigation in the U.S. district courts and "should be used instead of, rather than in addition to, civil litigation."  157 Cong. Rec. S1363.  Allowing stays of non-patent claims furthers this goal.  Where (as

---

[8]  *See*, *e.g.*, *Automated Merch. Sys., Inc. v. Crane Co*., 357 Fed. App'x 297, 303 (Fed. Cir. 2009); *Regents of the Univ. of Mich.*, 2013 WL 2393340, at *3; *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659 WHA, 2011 WL 445509, at *6 (N.D. Cal. Feb. 3, 2011); *Lederer v. Newmatic Sound Sys.*, No. 10-CV-0271, 2011 U.S. Dist. LEXIS 757, at *1, *9 (E.D.N.Y. Jan. 4, 2011); *Lincoln Elec. Co. v. Miller Elec. Mfg. Co*., No. 1:06-CV-2981, 2011 U.S. Dist. LEXIS 27578, at *11 (N.D. Ohio Mar. 17, 2011); *GPS Indus. v. Pro Link Solutions*, No. 08 C 4028, 2009 U.S. Dist. LEXIS 131926, at *10 (N.D. Ill. Feb. 25, 2009).

here) a party pleads both patent infringement and pendent state law claims, if the patent claims are dismissed the district court would then have discretion to decline to exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c). Thus, if litigation on patent law claims is stayed, a stay of the pendent claims would foster judicial economy given that the non-patent claims might well disappear from federal court if the patent is invalidated. And if the patent is found valid, all claims will proceed together with unified discovery and, if necessary, a single trial—just as the plaintiff anticipated when it filed the claims together in a single action. As explained below, all those considerations apply to this case. *See infra* at 38-47.

Segin also argues that staying its supplemental state law claim "will cause inefficiencies" by causing plaintiffs to file separate lawsuits in state and federal court rather than bringing their state law claims together with patent claims in a federal court. Opening Br. 21 (emphasis removed). As shown by this case, that concern is far-fetched. Although it now adamantly denies that the claims are related, Segin alleged in its complaint that its claims arise from a common nucleus of operative fact. *See supra* at 8-9; A302. Segin filed the claims together because it wanted both claims tried together. That is exactly what will happen if the patent claim survives CBM review and both claims are found triable.

In other cases, parties would only split their claims between federal and state court at their peril.  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Thus, if a party splits its claims and suffers an adverse judgment on one of them, all claims or defenses "arising from a 'common nucleus of operative facts' are merged or extinguished."  *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663 (5th Cir. 1994)).  To avoid preclusion, plaintiffs must raise related claims together.  *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 39 (1st Cir. 1998).  There is thus no real worry that plaintiffs will split their causes of action to "forum shop."  Opening Br. 21.  Segin's actions in this case prove that point.

Finally, there is no cause for this Court to consider or rule on Segin's argument that a stay would have been unwarranted under standards that purportedly would apply outside the Section 18 context.  *See id.* at 22.  The district court would have ample grounds to stay the non-patent claims under its inherent authority.  *See*, *e.g.*, A28 (district court recognition that stay was supported by court's "inherent interest 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases'"); *see also supra* note 8 and authorities cited

therein.  This Court's jurisdiction, however, extends only to the review of a stay under Section 18(b).  If, as Segin argues, the request to stay the non-patent claim should be subjected to different standards (and it should not), the district court— not this Court—must consider and apply those standards in the first instance.  If the district court were to do so, this Court would have no jurisdiction to review that interlocutory decision.  *See*, *e.g.*, *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1359-60 (Fed. Cir. 2011).  Thus, in the very unlikely event the district court were required to analyze the request to stay the non-patent claim outside the context of Section 18(b), Segin cannot avoid that jurisdictional bar by attempting to argue its case in the first instance to this Court.  Indeed, the fact that Segin attempts to raise those arguments for the first time in this Court only underscores why this entire argument has been waived.  *See supra* at 23-26.

## III.   THE DISTRICT COURT DID NOT ERR IN GRANTING A STAY.

Segin does not challenge the district court's decision to stay the patent claim but argues only that the court erred in staying the entire case.  When that decision is properly reviewed under an abuse of discretion standard, it is readily apparent that the district court did not abuse that discretion.  But even if a de novo standard applies, the district court's decision should be affirmed.  Whatever the standard of review, the court did not err in managing its own docket so that the claims that Segin itself brought together should proceed together, rather than engendering

complicated separate discovery tracks and potentially multiple trials on claims that stem from the same underlying facts and involve overlapping evidence.  Indeed, as explained below, the factors weigh even more heavily in favor of a stay than the district court concluded.[9]

### A.    The Stay Reduces The Burdens Of Litigation On The District Court And The Parties.

In extending the stay to the non-patent claim, the district court relied primarily on the fourth statutory factor, which evaluates "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D).  The court concluded that this factor weighed strongly in favor of a stay while the other factors were neutral or weighed less strongly the other way.  Accordingly, because this factor was the principal ground for the district court's decision, Defendants will address it first here.  *See VirtualAgility*, 759 F.3d at 1313 (considering first and fourth factors before second and third).

---

[9] Segin's several citations to *Cherokee Nation v. United States*, 124 F.3d 1413 (Fed. Cir. 1997), as authority on weighing stay factors are inapposite.  That case did not involve a stay pending PTO proceedings, much less one under the specific standards of AIA § 18(b).  Rather, the case addressed the limits of a federal court's power to "stay proceedings indefinitely." *Id.* at 1416.  Weighing various factors, the Court held that the Court of Federal of Claims abused its discretion in indefinitely staying certain claims by Indian tribes against the United States.  *Id.* at 1418.  Here, the district court did not purport to stay any claims indefinitely—but only until completion of the PTAB review—and the relief sought by Defendants was specifically authorized by Section 18(b).

As Segin admits, this factor "substantially altered" the governing standard in favor of granting stays.  Opening Br. 19.  The factor "was included, in part, to ease the movant's task of demonstrating the need for a stay."  *buySAFE*,  2014 WL 2714137, at *7; *Zillow*, 2013 WL 5530573, *3 ("the four-factor test was designed to increase the likelihood that the court will grant a stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO reexamination"); *Market-Alerts*, 922 F. Supp. 2d at 489-90; *Progressive Cas. Ins.*, 2013 WL 1662952, at *3.

Indeed, Senator Schumer—whose views Segin favors—thought that given the statutory language, "it is nearly impossible to imagine a scenario in which a district court would not issue a stay."  157 Cong. Rec. S1053 (Mar. 1, 2011).  *See Sightsound*, 2013 WL 2457284, at *1.  In his view, the fourth factor was intended to "place[] a very heavy thumb on the scale in favor of a stay being granted,"  157 Cong. Rec. S1053; A18, and that "[i]t is congressional intent that a stay should only be denied in extremely rare circumstances."  157 Cong. Rec. S1363-64 (Mar. 8, 2011) (statement of Senator Schumer); *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893, 2013 WL 6912688, at *2 (W.D. Tex. June 20, 2013).[10]  Courts

---

[10]  Senator Schumer further opined that the *Broadcast Innovation* test was chosen because it emphasizes the fourth factor, which is "often ignored by the courts."  157 Cong. Rec. S1364.  In his view, "[t]oo many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing parties to fight in two fora at the same time.  This is unacceptable, and

have therefore considered this factor "in light of the suggestion that it was enacted in order to increase the likelihood that a stay would be granted," *Sightsound*, 2013 WL 2457284, at *3, and at least one court has required "exceptional circumstances" to overcome the presumption in favor of a stay. *See Landmark Tech v. ADT Corp.*, No. 6:13cv758 JDL, 2014 WL 2997371, at *2 (E.D. Tex. July 3, 2014) ("the Court finds no exceptional circumstances to overcome the heavy thumb Section 18(b) places in favor of a stay").

The district court did not err in holding that this factor "weighs strongly in favor of a stay." A28. The court recognized its "inherent interest 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link*, 370 U.S. at 630-31). And allowing the case to "progress in a piecemeal fashion" would increase the burden of the litigation. A28 (citing *Versata Software, Inc. v. Dorado Software, Inc.*, 2:13-CV-00920-MCE, 2014 WL 1330652 (E.D. Cal. Mar. 28, 2014)). Segin argues that "[t]he only aspect that could weigh in favor of a stay is the prospect of two trials," Opening Br. 36, but that is not true. As the district court found, the court would "still have to expend resources adjudicating the discovery disputes between the parties" regardless of whether the patent's claims are invalidated. A28. And "because discovery has

would be contrary [to the purpose of] provid[ing] a cost efficient alternative to litigation." *Id.*

40

already been contentious," the court anticipated that if only the patent claim was stayed it would additionally "be required to adjudicate which discovery matters pertain to the breach of contract claim and which do not." A28 (citing *Regents of the Univ. of Mich.*, 2013 WL 2393340, at *3). Furthermore, if the stay were lifted "the parties may have to duplicate some remaining discovery matters, such as deposing witnesses twice who have information as to both claims." A28.

Under any standard of review, the district court's analysis was correct. Allowing the state law claim to proceed while the patent claim is stayed would potentially engender duplicative, wasteful, and burdensome discovery proceedings. Segin's actions in discovery underscore why it would be wasteful to proceed to trial on the state law claim alone. Many of the same witnesses would be involved in each claim. Thus, before the stay, Segin sought to depose five Stewart witnesses, and immediately after receiving the July 23 order (which stayed only the patent claim), Segin again sought to depose all the *same* witnesses. A801. Thus, having two different discovery proceedings could in many instances double the burden placed on witnesses to appear at depositions and testify at trial.

Segin has already conceded as much. In opposing the initial stay request, Segin argued *against* splitting the state law and patent claims, conceding that "there can be no doubt that both parties will be forced to incur significant duplicative and additional costs when the case recommences…." A737. For

41

example, Defendants will need to depose Segin's owner and patent inventor, Dick

Reass, and the programmers and developers of the Rynoh*Live* software.  A801.

Because it is conceded that the patent claim was validly stayed, these witnesses

could not be deposed on that claim, but deposing them solely in connection with

the breach of contract claim would require a second, wasteful round of depositions

in the event any patent claims survive the CBM review.  The same experts hired by

the parties to assess damages for alleged patent infringement would need to review

similar information to determine and refute claims for damages from the alleged

breach of the NDAs.  *Id.*  And as the district court found, A27, the parties would

have to determine which documents and deposition questions relate solely to the

breach of contract claim, and which relate to the patent claim, with an almost

certain need for the district court's intervention to resolve such disputes.  *See*

A801-02.  Those disputes, moreover, would arise regardless of the PTAB's

eventual decision.

And a stay of just the patent claim would raise the prospect of two sequential

trials on related claims involving the same underlying conduct, overlapping

evidence, and the same allegations of harm.  *See* A27 (noting that if the patent is

not invalidated "the Court will be required to hold two trials").  Even Segin admits

that this prospect "could weigh in favor of a stay."  Opening Br. 36.  In fact, it

weighs overwhelmingly in favor.  Nothing in Section 18(b) or any other source of

law authorizes this Court to force a district court to hold two sequential trials on claims arising from a common nucleus of operative fact that a plaintiff itself chose to bring together.

Indeed, staying all claims avoids a constitutional issue that would be implicated by sequential trials. *Cf. MySpace, Inc. v. Graphon Corp.*, 672 F.3d 1250, 1260-61 (Fed. Cir. 2012). The Seventh Amendment to the Constitution precludes separate trials before separate juries on interwoven issues. *See Gasoline Prods. Co. v. Champlin Ref.*, 283 U.S. 494, 498-500 (1931). Thus, this Court held in *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545 (Fed. Cir. 1986), that the Constitution precluded separate trials on patent infringement claims and related claims over a licensing contract because the arguments were inextricably woven together. *Id.* at 1549. Staying all claims in this case avoids this potential problem.

Segin's sole argument on the litigation burden is that "this factor should not count at all" because future plaintiffs will invariably "split their claims to ensure timely resolution." Opening Br. 36. Segin chose to bring its claims together precisely because they arose from a common nucleus of operative fact, and any plaintiff that elects to split such related claims between different courts runs a significant risk of claim preclusion when its case proceeds to judgment. *See supra* at 36. Moreover, as discussed more fully below, Segin took its time with this case

and never moved for injunctive relief, even before the stay, thus demonstrating a lack of concern regarding the eventual timing of adjudication. *See infra* at 52-54. Given the now-conceded fact that litigation on the patent claim would be stayed, the district court, which was intimately familiar with this contentious litigation, did not err in finding that "allowing the case to progress in a piecemeal fashion will increase the burden of litigation in this case." A28. Given the particular importance of this factor, the district court's ruling can and should be sustained based on this finding alone.

### B.    The Stay Will Simplify The Issues And Streamline A Trial.

The first factor examines "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." AIA § 18(b)(1)(A). The district court concluded that this factor was "neutral" based, in part, on its view that the breach of contract "claim will remain and will not be simplified no matter what the outcome of PTAB review." A27. That is, the PTAB's determination of the validity of the patent would not affect the ultimate conclusion as to whether the Defendants breached the NDA. A26-27. Nonetheless, the district court recognized that a partial stay would "increase, rather than simplify, the issues in dispute, because the Court will be required to adjudicate which contested discovery matters pertain to which claim and to which parties (as the breach of contract claim was not brought against FBS)." A27.

This factor weighs in favor of a stay. While the district court's overall decision can be sustained based on the court's own analysis, a proper consideration of this factor only underscores why affirmance is required. While it is true that a decision on the validity of the patent will not necessarily determine the outcome of the state law claim, there are other issues that could be "simplified" by staying the breach of contract claim pending a PTAB ruling. As the district court found, a partial stay would "increase, rather than simplify, the issues in dispute," *id.*, by engendering discovery disputes that would inevitably arise as the parties contest whether a particular document request or deposition question relates to the unstayed state law claim or the stayed patent claim. A28. Segin's only response on this point is to argue, once again, that the breach of contract claim is "entirely unrelated" and "entirely distinct" from the patent claim. Opening Br. 27. That is wrong for the reasons iterated above; the fact that a decision on one claim will not resolve the other in no way means that they are unrelated.

But in addition, staying the non-patent claim could well result in the complete dismissal of the state law claim in the event that the patent is invalidated and the infringement claim dismissed.[11] Segin has alleged that the district court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a).

---

[11] Furthermore, the state law claim is only directed at Stewart and PIC. The PTAB's determination of invalidity would eliminate all claims as to FBS.

45

Thus, if the federal claim is dismissed because the patent is invalid, that would provide the district court with strong grounds to exercise its discretion to dismiss the supplemental state law claim under 28 U.S.C. § 1367(c). *See*, *e.g.*, *Russo v. Sch. Bd. of Hampton*, 835 F. Supp. 2d 125, 136 (E.D. Va. 2011) (dismissing state law breach of contract claim after dismissing federal question claims) (citing *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished")). That is particularly so given that the parties agreed in the NDAs that jurisdiction would be in Virginia state court if exclusive federal jurisdiction did not exist. A308 ¶ 29.[12]

In addition to potentially simplifying the issues, staying the entire case would unquestionably "streamline the trial" in the event the patent is not entirely invalidated by the PTAB. AIA § 18(b)(1)(A). As already noted with respect to the

---

[12] In the complaint that was before the district court on the motion to stay, the only basis for the state law claims is supplemental jurisdiction under Section 1367(a). A302. After filing its brief on appeal, Segin sought leave to modify the stay to file an amended complaint containing, *inter alia*, an allegation of diversity jurisdiction. The record of this case, however, does not include that amended complaint, which has not yet been accepted for filing below. In any event, even if Segin had properly pled diversity jurisdiction, the district court would have authority to dismiss the breach of contract claim once the patent claim is dismissed, based on the forum selection clause of the NDAs. *See supra* note 3; *Atlantic Marine Constr. Co.* v. *United States Dist. Ct.*, 134 S. Ct. 568 (2013). That clause allows litigation in federal court only if there is "exclusive federal jurisdiction," A308 ¶ 29, which would not be the case if the patent claim is dismissed.

litigation burden factor, a partial stay would require two separate (and potentially unconstitutional) trials involving overlapping evidence and issues. Contrary to Segin's contention, this issue is not immaterial to the first factor. Opening Br. 28. While the first and fourth factors are "separate, individual factors which must be weighed in the stay determination," it remains true that "both factors [may] point in the same direction." *VirtualAgility*, 759 F.3d at 1313. The first factor expressly directs the district court to examine whether a stay could "streamline the trial." AIA § 18(b)(1)(A). It is plainly relevant to that issue whether the court may have to conduct multiple, sequential trials on overlapping claims.

Accordingly, the first factor weighs in favor of affirming the district court's decision staying litigation on all issues in the case.

### C.     Discovery Is Far From Complete.

Section 18(b)(1) states that the court should consider "whether discovery is *complete* and whether a trial date has been set." AIA § 18(b)(1) (emphasis added). Although the district court briefly concluded that this factor was "neutral," A27, this factor should weigh in favor of a stay.

Segin now says it "has what it needs for trial" on the state claim, Opening Br. 12, and even states that "[d]iscovery with respect to that claim is nearly complete," *id*. at 14, 29. But that statement is plainly wrong. Discovery is far from complete. Depositions have not even begun. A581. No expert reports have

been exchanged. *Id.* The document production and interrogatory phases of discovery have not been completed, and the parties' motions to compel and for sanctions remain pending in the trial court. *See* A214 (Dkt. 87, 93); A217 (Dkt. 130) (order cancelling discovery motions hearing and all depositions pending court's ruling on motion to stay). To date, the parties have not developed their positions before the court on what depositions and discovery would be relevant only to the breach of contract claim, rather than the patent infringement claim, although such numerous and contentious determinations would be necessary should the stay of the breach of contract claim be lifted. *See* A28. Indeed, after litigation on the patent claim was stayed but before the stay was extended to the breach of contract claim, Segin reiterated the same deposition requests, A801, belying its present contention that it believes it "has what it needs for trial" on that claim, Opening Br. 12.

Contentious disputes over discovery should not be confused with progress of the litigation; instead, the disputes highlight how far discovery remains from being "complete." *See Unwired Planet, LLC v. Google, Inc.*, No. 3:12-CV-00504-MMD-VPC, 2014 WL 301002, *6 (D. Nev. Jan. 27, 2014) ("While the parties have already brought several disputes before the Court, the case remains in an early stage."). Both parties have filed motions to compel further discovery and for discovery-related sanctions. *See* Dkt. 87, 93. In *Transunion Intelligence, LLC v.*

*Search Am., Inc.*, No. 11-CV-1075, 2014 WL 753781, at *2 (D. Minn. Feb. 26, 2014), the court found the second factor weighed in favor of a stay even when discovery **was** complete, because the case remained in its early stages "[f]rom a decisional perspective," given that the court "has not yet prepared for a *Markman* hearing, conducted such a hearing, or drafted a *Markman* order; the parties have not yet filed or briefed any summary-judgment motions; the Court has not yet prepared for a summary-judgment hearing, conducted such a hearing, or drafted an order disposing of the summary-judgment motions; and trial is nowhere near imminent." *Id*. at *2-3.  Here, the court has not even resolved pending disputes on initial document requests.

The district court is in the best position to evaluate how much discovery has actually transpired and how much remains; but clearly much remains to be done in this case.  *See Sightsound*, 2013 WL 2457284, *3 (noting that "while much has been done thus far, there is more to come.  The parties and Court will expend further substantial resources in this litigation, through completing discovery and trial.").  Some of the most time-consuming aspects of discovery have not even commenced: the taking of depositions and preparation of expert reports.  A577, 581.  *See Zillow,* 2013 WL 5530573, *5 (concluding that "discovery is not complete" where parties exchanged numerous rounds of discovery requests, and produced "well over a hundred thousand pages of documents," but have not taken

any depositions); *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *5 (finding discovery is "far from complete" where "no depositions have been noticed or taken, no expert reports have been exchanged, and no subpoenas have been served").

A trial date was set, but that does not weigh in favor of a stay. The October 28, 2014 trial date was set early in the case (in January 2014), *after* the Defendants initially moved for a stay. A30. In the Eastern District of Virginia, it is normal for a trial date to be set early in the case, but that date is subject to change. *See buySAFE*, 2014 WL 2714137, *5 ("Here, while a trial date has been set, it was scheduled early in the proceedings as is customary in this District"). Moreover, the trial date was set before the district court was apprised of the pace of this litigation, and discovery in particular. Thus, more than three months after the court set the trial date, the district court nonetheless described the case as in its "moderately early stages," and noted that "discovery has only recently begun." A8.

Thus, discovery is not "complete," and much remains to be done before a trial could actually occur. The second factor weighs in favor of a stay.

**D.    A Stay Does Not Prejudice Segin Or Give Defendants A Tactical Advantage.**

While a stay may delay proceedings, "the potential for delay does not, by itself, establish undue prejudice." *Market-Alerts*, 922 F.Supp.2d at 494; *buySafe*, 2014 WL 2714137, at *6. In determining whether the court will present a tactical

50

advantage for the defendant, courts consider "the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties." *buySafe*, 2014 WL 2714137, at *6; *Progressive Cas. Ins.*, 2013 WL 1662952, at *6.

The district court initially found that this factor weighed against a stay on the mistaken belief that Defendants and Segin are "direct competitors" and based on purported evidence that "Stewart Title and/or FBS are currently marketing and licensing AgencySecure 'to Rynoh*Live*'s main customers (various title agencies) at a lower price that that charged for Rynoh*Live*.'" A10, A27 (incorporating prior finding that "Plaintiffs are likely to suffer undue prejudice as a result of delay because they are Defendants' direct competitors.").

In fact, Segin and Defendants are not direct competitors, because Defendants do not place AgencySecure on any open market. In its complaint, Segin admits that AgencySecure was "used only by Stewart entities" when released, A309 ¶ 39, but alleges "upon information and belief" that Stewart had provided information to FBS to "facilitate the cloning of Rynoh*Live* and the launch of a directly competing software," A305 ¶ 18; *see also* A317 ¶ 86. There has been, however, no adjudication that Defendants actually "launched" the AgencySecure product in external markets. In fact, Defendants maintain that Stewart continues to provide AgencySecure only to Stewart's own agents. *Compare* A309-310 (¶¶ 39-40) *with*

A1005, 1021 (¶¶ 39-40).  Indeed, it would be contrary to Stewart's competitive interests to provide the AgencySecure products to competing title insurance companies, because it would thereby lose a competitive advantage it has in providing title insurance services.[13]

But it is ultimately unimportant to this appeal whether or not the parties are competitors because the question is whether a stay would "unduly prejudice" Segin and that question, in turn, depends on whether Segin has shown that it would be prejudiced by a delay in litigating its claims, beyond anything that monetary relief could compensate.  As this Court held in *VirtualAgility*,

> whether the patentee will be unduly prejudiced by a stay in the district court proceedings during the CBM review, like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim.  A stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy.

759 F.3d at 1318.

Thus, in *VirtualAgility*, the Court held that the second factor weighed in favor of a stay because the patentee had never moved for a preliminary injunction.  Although the patentee argued that it had not done so for cost reasons, "the fact that it was not worth the expense to ask for this remedy contradicts [the patentee's]

---

[13] Segin complains that Stewart provides AgencySecure to its own agents at a lower price than Rynoh*Live*.  To the extent there is a price difference, it is based on Segin's assertion to the market that RynohLive is protected by a patent.  *See* A716.

assertion that it needs injunctive relief as soon as possible." *Id*. at 1319. The Court also noted that the patentee "waited nearly a year after the ... patent issued before it filed suit against Defendants" and held that "[t]hese facts weigh against [the patentee's] claims that it will be unduly prejudiced by a stay." *Id. See also Zillow*, 2013 WL 5530573, at *6 ("attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief") (citing cases); *Unwired Planet*, 2014 WL 301002, *6 (granting stay in part because plaintiff did not seek injunction); *Visual Interactive Phone Concepts, Inc. v. Samsung Telecom., Am., LLC*, No. 11-12945, 2012 WL 1049197, at *3 (E.D. Mich. Mar. 28, 2012) (same); *Round Roc Research LLC v. Dole Food Co*., No. 11-1241, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012) (same).[14]

So too here, Segin's argument that it suffers undue prejudice is undermined by the fact that it has never moved for injunctive relief. Moreover, just as with the plaintiff in *VirtualAgility*, Segin was in no hurry to file its breach of contract claim

---

[14] Non-AIA cases are to the same effect. *See Ever Win Int'l Corp. v. Radioshack Corp*., 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *Studer Prof'l Audio GmbH v. Calrec Audio Ltd*., No. 2:12-cv-02278 (WHW), 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (patentee had not shown undue prejudice because it did not seek a preliminary injunction and would "still have all of [its] legal and equitable remedies available when the stay is lifted"); *E.I. Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, No. 10-3409(MLC), 2012 WL 2995182, at *5 (D.N.J. July 23, 2012).

in the first place.  Although Segin alleges that Stewart launched AgencySecure in October 2009, A309, Segin did not file suit until April 12, 2013, A321.  Segin did not even serve the complaint until more than three months later.  A24.  Just as in *VirtualAgility*, "[t]hese facts weigh against [Segin's] claims that it will be unduly prejudiced by a stay."  759 F.3d at 1319.

The failure to seek injunctive relief implies that Segin's alleged harms can be remedied by monetary damages.  *See id*. at 1318 ("[a] stay will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages"); *Studer Prof'l Audio GmbH*, 2012 WL 3061495, at *2 (concluding that patentee had not shown undue prejudice because it did not seek a preliminary injunction and would "still have all of [its] legal and equitable remedies available when the stay is lifted."); *Progressive Cas. Ins. Co*. 2013 WL 1662952, at *8 ("Progressive has not shown why monetary damages would not alleviate the prejudice that it claims it will suffer.").  Accordingly, regardless of whether the parties are competitors, Segin has not shown that it will suffer any undue prejudice from a stay, which would still allow it to press its claims for monetary relief.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order of August 8, 2014.

54

Respectfully submitted,

/s/ Jonathan S. Franklin
Jonathan S. Franklin
Mark Emery
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466
jonathan.franklin@nortonrosefulbright.com

Counsel for Appellees Stewart Title Guaranty
Company and PropertyInfo Corporation

/s/ W. Ryan Snow
W. Ryan Snow
CRENSHAW WARE & MARTIN, PLC
150 West Main Street, Suite 1500
Norfolk, VA 23510
(757) 623-3000
wrsnow@cwm-law.com

Counsel for Appellee First Banking
Services, Inc.

October 27, 2014

## DECLARATION OF AUTHORITY

Pursuant to Federal Circuit Rule 47.3(d), I am authorized to sign this brief

on behalf of W. Ryan Snow, attorney of record for Appellee First Banking

Services, Inc.   This declaration of authority is made under penalty of perjury

pursuant to 28 U.S.C. § 1746.

Dated: October 27, 2014.                    /s/ Jonathan S. Franklin
                                             Jonathan S. Franklin

                                             Counsel for Appellees Stewart Title
                                             Guaranty Company and PropertyInfo
                                             Corporation

## CERTIFICATE OF SERVICE

I certify that on October 27, 2014, this brief was served by email upon the

following counsel:

A. John P. Mancini
Mayer Brown LLP
1675 Broadway
New York, NY 10019

Paul W. Hughes
Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006

*Counsel for Appellants*

/s/ Jonathan S. Franklin
Jonathan S. Franklin

Counsel for Appellees Stewart Title
Guaranty Company and PropertyInfo
Corporation

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,386 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman typeface.

/s/ Jonathan S. Franklin
Jonathan S. Franklin

Counsel for Appellees Stewart Title
Guaranty Company and PropertyInfo
Corporation